No. 62,421

STATE OF KANSAS, *Appellee*, v. TONI JARMON a/k/a TONI CARTER, *Appellant.*

(783 P.2d 1267)

Opinion filed December 8, 1989.

*Shannon S. Crane,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Wesley K. Griffin,* special prosecutor, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NICHOLAS W. KLEIN, District Judge, Assigned: Toni Jarmon a/k/a Toni Carter appeals her convictions of aggravated robbery, K.S.A. 21-3427; aggravated kidnapping, K.S.A. 21-3421; aggravated burglary, K.S.A. 21-3716; kidnapping, K.S.A. 21-3420; and theft under $150, K.S.A. 1987 Supp. 21-3701. Jarmon was tried and convicted with Herman Trotter, Jr., whose appeal is also decided this date. Jarmon raises two points on appeal.

The aggravated kidnapping and aggravated robbery arose out of one incident which will be referred to as the Culbert incident,

and the balance of the charges arose out of another similar incident which will be referred to as the Webster incident. The first point concerns only the Culbert incident.

The victim, William S. Culbert, testified that Jarmon came to his apartment with a man. Culbert scuffled with the man, receiving a fractured cheekbone and cuts to his hands. The victim testified that he was then tied up and that money, food from the refrigerator, women's shoes, a watch, and some "knicknacks" were taken. He also testified that his keys were taken. After the incident, the authorities discovered drug paraphernalia on a table in the living room of the victim's apartment. Toni Jarmon had been a frequent visitor to the victim's apartment and had resided there at times in the past for extended periods. She testified that she had previously seen drug paraphernalia in the apartment and that there were always illegal drugs on the premises. Culbert denied that the articles were his.

In a statement to the officers at the scene, Culbert said that the perpetrators of the crime must have left the articles. At trial he simply said he did not know how the items came to be on his table. The victim had been convicted of possession and sale of marijuana in 1978. The trial court, at a hearing on the State's motion in limine, prohibited the introduction of any evidence of those convictions or the mention of them in jury selection. The court relied upon K.S.A. 60-421, which prohibits evidence of the conviction of a witness of a crime not involving dishonesty, and a series of Kansas cases holding that drug convictions do not involve dishonesty. *State v. Woolridge*, 224 Kan. 480, 580 P.2d 1350 (1978); *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 (1978); *State v. Crowley*, 220 Kan. 532, 552 P.2d 971 (1976); *State v. Belote*, 213 Kan. 291, 516 P.2d 159 (1973); *State v. Loveland*, 8 Kan. App. 2d 196, 653 P.2d 472 (1982), *reh. denied* 232 Kan. 876 (1983).

Jarmon grounds her claim of error in this ruling on the language of this court in *State v. Bradley*, 223 Kan. 710, Syl. ¶ 2, 576 P.2d 647 (1978): "A defendant is entitled to present the theory of his defense. The exclusion of evidence, which is an integral part of the theory of defense, violates the defendant's fundamental right to a fair trial."

Jarmon's argument is that the victim was injured in a drug sale "gone sour" and that his jealousy over Jarmon's breaking off an affair with him provided the opportunity and the motive to fabricate the story of robbery and implicate Jarmon. It is then claimed that the prior convictions for drug possession and sale furnish evidence of a motive for lying by the victim. Evidence suggesting a motive for lying is, by definition, evidence affecting credibility of a witness. See *State v. Murrell,* 224 Kan. 689, 694-95, 585 P.2d 1017 (1978), which quotes with approval *State v. Montanez,* 215 Kan. 67, 72, 523 P.2d 410 (1974), " 'Bias, interests or improper motives of a witness may always be shown in order to place his testimony in proper perspective [citations omitted].' "

Clearly, the "motive" suggested by Jarmon is a credibility issue which cannot be shown by offenses not affecting dishonesty under our statute.

The more likely purpose of the offer was to form a basis for argument that the incident resulted from a drug deal "gone sour," of which there is no evidence, either admitted or proffered. Evidence of the prior convictions does not furnish evidence of a drug deal "gone sour," and, therefore, is not an integral part of the theory of defense.

Jarmon's second point relates to the sufficiency of the evidence to sustain all convictions. As previously noted, in addition to the convictions of aggravated kidnapping and aggravated robbery, of which defendant Jarmon was convicted with her codefendant, she was convicted of aggravated burglary, kidnapping, and theft under $150 arising out of another similar incident. Without reciting the facts in detail, it is clear that the testimony of the victims of the incidents supplied all the elements of the offenses of which the defendant is convicted. Jarmon's complaint is that the testimony of the victims was so confused, inconsistent, and untruthful that a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt.

There are inconsistencies in the testimony of Culbert. He told the police the defendant was only at his apartment once on that day in question. He later admitted that was a mistake. The first time the defendant was there, a person identified as "Spunky" was there. At first, "Spunky" was identified as a nephew, but later Culbert admitted that he was his cousin and implied that

he habitually referred to "Spunky" as his nephew in spite of the true relationship. Culbert testified that Jarmon witnessed the exchange of money between himself and "Spunky" when "Spunky" repaid a loan from Culbert. He placed the site of the money exchange at what might either be two different locations or the same location described in two different ways, both in Jarmon's presence. Culbert's testimony about the time of the events is not consistent with the records made by the apartment complex where he lived. Persons coming and going from the building are required to check in and indicate the time of their visit. Culbert estimated the times at considerable variance from the times indicated by the records. However, he consistently stated he was not sure, and the defendant was not prejudiced in any way shown by this record because of this variance. Culbert told a convoluted story about the ownership of the women's shoes that were taken, attributing ownership of them to possibly three different people—his wife, his cousin, and his girlfriend. All of these discrepancies were before the jury.

Wade Webster, the victim of the kidnapping, aggravated burglary, and theft under $150, testified that Jarmon stayed with him occasionally when she had no place to stay. This was contradicted by other witnesses and by defendant and her mother. Jarmon and her mother testified that defendant had a "relationship" with Webster. Other discrepancies in the testimony of Webster are so inconsequential as not to merit discussion.

The standard for habeas corpus cases, testing the sufficiency of evidence to sustain a conviction as adopted for purposes of the due process clause of the 14th Amendment to the United States Constitution, is set forth in *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, *reh. denied* 444 U.S. 890 (1979). This court recognized that standard as the correct one to be applied in a ruling on a motion for judgment of acquittal and appellate review of that ruling. The rule is stated various ways but essentially the evidence must be such that a rational trier of fact could fairly conclude guilt beyond a reasonable doubt. *State v. Pham,* 234 Kan. 649, 675 P.2d 848 (1984); *State v. Williams,* 229 Kan. 290, 296, 623 P.2d 1334, *reh. denied* 229 Kan. 646 (1981); *State v. Hutton,* 232 Kan. 545, 657 P.2d 567 (1983). When applied to the trial court, the rule requires the trial court to give

full play to the right of the jury to *determine credibility of witnesses,* weigh the evidence, and draw reasonable inferences of fact. *Hutton,* 232 Kan. at 552. As applied to appellate review, the rule is that the evidence must be viewed in the light most favorable to the State. All questions of credibility must be resolved in favor of the State, and all reasonable inferences as are possible from the evidence and necessary to support the verdict must be considered as having been arrived at by the trier of fact. See *State v. Pham,* 234 Kan. at 668.

No case has been cited, and we have found none, which announces a standard for reviewing the *quality* of the evidence as opposed to its admissibility. Credibility of witnesses in criminal jury cases is an issue for the jury, not for the trial judge or the appellate courts. Except when as the court might conclude that a rational finder of fact could *not* conclude guilt beyond a reasonable doubt, courts will not review credibility questions fairly presented to the jury. Such an exercise would inevitably involve weighing the evidence. Determining credibility is weighing the quality of the evidence without regard to the countervailing evidence, if any. In any event that is a jury function, not a court one. When the above rules are applied to the evidence in this case, the judgment of the trial court was correct.

Affirmed.

SIX, J., not participating.