631 A.2d 499

**Dale GIDDENS**

v.

**STATE of Maryland.**

**No. 53, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Oct. 4, 1993.

---

Susan L. Jordan, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

George E. Simms, III, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and MOTZ and MURPHY, JJ.

WILNER, Chief Judge.

A jury in the Circuit Court for Kent County convicted appellant of assault. In this appeal from that conviction, he makes two complaints: (1) that the court erred in allowing the State to impeach his testimony with a prior conviction for distribution of cocaine, and (2) that it erred as well in refusing to inquire whether the prospective jurors or their relatives were involved in law enforcement. For the reasons stated in *Davis v. State,* 93 Md.App. 89, 611 A.2d 1008, *cert. granted,* 329 Md. 22, 616 A.2d 1286 (1992), we find no merit in his second complaint. Our focus, therefore, will be on the impeachment evidence.

James Coleman, the victim, testified that, on the evening of May 7, 1992, he was using a public telephone to converse with his girlfriend, Rhonda Thorpe, when appellant drove up across the street, parked his car, and approached him. While still in the middle of the street, appellant pulled out a black pistol and asked when Coleman was going to get off the phone. Coleman said that, although he knew it was a gun that appellant had, he asked "is that a gun you are pointing at me?" to which appellant, who was about three feet away, replied "yes, it is. Do you have an f-ing problem with it?" At that point, Coleman ended his conversation and walked to Rhonda's house, leaving appellant at the phone booth. Coleman said that he did not know appellant at the time but learned his identity later. He stated that some time after the incident, he passed appellant on the street, that appellant told him that he did not have to say anything against appellant in court, and that he should not have been on the corner in any event "because it is a drug infested corner." Coleman identified appellant in court as the person who accosted him.

Ms. Thorpe provided some corroboration for Mr. Coleman's story. The heart of her testimony was the statement: "I was talking to Jamie, and all I heard was 'Have you got a problem with that?' Jamie says, 'Is that a gun you are holding?' . . . ." That was the State's case.

Appellant could not account for his whereabouts on May 7, 1992 but denied the incident. He said that he did not know Mr. Coleman. The issue for the jury was purely one of credibility: was it going to believe Mr. Coleman or appellant?

When, at the end of the State's case, appellant stated his intention to testify, the prosecutor indicated that she intended to impeach his testimony with a 1989 conviction for distribution of cocaine. Citing *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981), appellant objected on the ground that drug distribution was not one of the infamous crimes and had no bearing on his believability. The State responded that the crime was not only a felony but a crime involving moral turpitude and, as such, was admissible. After reading Md.Rule 1–502, which

governs the admission of prior convictions for impeachment purposes, and considering further argument of counsel, the court ruled that the State could use the distribution conviction. It explained its reasoning:

"THE COURT: The question is whether it would be a crime of moral turpitude. It is a felony. Therefore, he has been convicted of a felony, which requires felonious intent to commit the offense—in this case, distribution of a controlled dangerous substance. the Court finds that that is ... by being convicted of such a felony, that is conduct which is base or vile and contrary to the accepted and customary conduct between men. Therefore, I find that it is a crime of moral turpitude.

Next, I need to determine, after having find, after finding that it is a crime of moral turpitude, I need to determine whether or not its probative value of admitting the evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

In this case, the offense for which he is being tried is a battery, which has no relationship to distribution of a controlled dangerous substance. I find that I will give a cautionary instruction and instruct them as to how they can utilize it. But I believe that the probative value of admitting the evidence outweighs the danger of unfair prejudice in view of the charges in this case. If this were a charge of distribution of controlled dangerous substance, I would have a different finding. But in view of the charges and the difference, I will permit it over objection."

Following this ruling, appellant did testify and, in an obvious effort to dull the sting, admitted on direct examination that in 1989 he had been convicted of distribution of cocaine and that he had gone to prison.[1] There was no mention of any

---

1. In its text, Rule 1–502 allows a prior conviction to be used for impeachment "if elicited from the witness or established by public record during cross-examination...." The Committee Note to the Rule, added by the Court of Appeals, states in that regard that "[t]he requirement that the conviction, when offered for purposes of impeach-

of the details of the offense or what particular sentence was imposed. The State made no mention of the conviction in cross-examination. In its instructions, the court told the jury that it could consider the conviction in deciding whether appellant was telling the truth but for no other purpose. The court specifically admonished that the jury could not use the conviction as evidence that appellant had committed the assault with which he was charged. Although both sides stressed the issue of credibility in their closing arguments to the jury, neither made reference to the conviction.

Appellant makes three points in his argument. First, he complains that the court used the wrong standard in ruling that the conviction was admissible—that moral turpitude is not the criterion. Second, he argues that distribution of cocaine is neither an infamous crime nor one having any special relevance to credibility. And finally, he contends that, in light of Mr. Coleman's testimony that appellant had referred to the scene as a "drug infested corner," the prejudice emanating from informing the jury about the cocaine distribution conviction outweighed any probative value that evidence might have had by allowing the jury to speculate that appel-

---

ment, be brought out during cross-examination is for the protection of the witness and is not intended either to authorize or to preclude the party calling the witness from bringing out the conviction on direct examination."

The comparable Federal Rule, Fed.R.Evid. 609, has eliminated the requirement that the conviction be brought out on cross-examination, a limitation that, according to the Advisory Committee Note, "virtually every [Federal] circuit has found to be inapplicable." See 129 F.R.D. 353. The Committee Note added by the Court of Appeals to Rule 1–502 demonstrates the Court's awareness of the practice of bringing out this kind of evidence on direct examination to remove the sting of the impeachment. We regard the Committee Note as an implicit determination by the Court that, while there may be circumstances in which revelation of prior convictions ought not be done on direct examination, the Rule itself does not prohibit that tactic. In any event, the State does not argue in this appeal that appellant has in any way waived his right to complain about the court's ruling because he himself revealed the conviction on direct examination. It is evident from the prosecutor's initial presentation of the issue that, had appellant not confessed the conviction on direct examination, the State would have disclosed it during cross-examination.

lant was a drug dealer and wanted to use the telephone in furtherance of that nefarious endeavor.

We have quoted in full the reasoning expressed by the court in allowing the conviction to be used. It is evident at a glance that, although the court was certainly aware of Rule 1–502, it was, at best, confused as to the proper standard to apply under that Rule. It seemed to conclude that the standard was whether distribution of cocaine was a crime involving moral turpitude and that, because the crime was a felony, it necessarily involved moral turpitude and was, for that reason, eligible for admission, subject only to a balancing of its probative value against undue prejudice.

■ Md.Rule 1–502, essentially, creates a three-part test for determining the admissibility of prior convictions for impeachment purposes. Section (a) begins by making clear that a conviction is admissible "only if" the crime was an "infamous crime" or an "other crime relevant to the witness's credibility." That identifies the eligible universe. If the crime does not fall within one of those two categories, it is not eligible for admission as impeachment evidence, and no further consideration need be given to it. If the crime falls within that universe and the issue is raised, the proponent must then satisfy the conditions in sections (b) and (c) of the Rule by showing that the conviction is not more than 15 years old, that it was not reversed on appeal, and that it was the subject of neither a pardon nor a pending appeal. Finally, assuming that these conditions are satisfied (or not asserted), the court must determine that the probative value of the evidence outweighs the danger of unfair prejudice to the witness. *Beales v. State*, 329 Md. 263, 619 A.2d 105 (1993).

■ The major issue here is whether distribution of cocaine falls within the allowable universe under the Rule, for there is no contention that the particular conviction fails to satisfy the conditions of sections (b) or (c) of the Rule. In that regard, we note at the outset that admissibility is *not* determined by whether the crime in question is a felony or by whether it involves moral turpitude. Unlike the Federal Rule (Fed.

R.Evid. 609), which makes all Federal felonies eligible for admission, Md.Rule 1–502 is far more restrictive. The Court of Appeals, in developing that Rule, was aware of the Federal approach and expressly rejected the opportunity to have its Rule embrace all State felonies. Moreover, although moral turpitude was once a relevant consideration in determining what crimes were usable as impeachment material, the Court of Appeals expressly departed from that standard in *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988).

As noted, to be eligible for admission, the conviction must be of a crime that either was an "infamous" one or that has relevance to credibility. The "infamous" crimes consist of treason, crimes that were common law felonies, and crimes that fall within the category of *crimen falsi*. *Morales v. State*, 325 Md. 330, 600 A.2d 851 (1992). The crimes classified as *crimen falsi* were held in *Wicks v. State*, 311 Md. 376, 382, 535 A.2d 459 (1988), to include "crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully." The State does not suggest in this appeal that distribution of cocaine is an infamous crime, for good reason. It is not. *Dyce v. State*, 85 Md.App. 193, 582 A.2d 582 (1990).

The precise question, then, is whether this offense falls within the category of an "other crime relevant to the witness's credibility." The Circuit Court effectively declared it so on the basis that the underlying conduct was "base or vile and contrary to the accepted and customary conduct between men." That, of course, is not the test. All criminal behavior, by virtue of its being criminal, has been declared contrary to the "accepted and customary conduct between men" (and women). The question is whether it is relevant to credibility. The limitation itself presupposes that not all criminal behavior is so relevant.

Our inquiry, fortunately, has been somewhat focused for us by existing case law. We know, for example, that

simple possession of controlled substances is not a crime that is relevant to credibility and therefore cannot be used for impeachment purposes. *Morales v. State, supra*, 325 Md. 330, 339, 600 A.2d 851. In *Carter v. State*, 80 Md.App. 686, 566 A.2d 131 (1989), on the other hand—a case decided before the adoption of Md.Rule 1–502—this Court concluded that a conviction for drug manufacturing could be regarded as relevant to credibility, even though it was not an infamous crime. At 693, 566 A.2d 131, we explained:

> "This particular crime *necessarily* requires several steps involving premeditation and conscious violation of the law— acquisition of the raw materials for making drugs, processing the materials, and finding a means of distributing the drugs. Furthermore, all of these acts *must* be carried out surreptitiously to avoid detection and arrest."

(Emphasis added.)

In *Morales, supra*, 325 Md. at 339, 600 A.2d 851, the Court determined that possession of PCP with intent to distribute was not an infamous crime but found it unnecessary in that case to decide "whether a prior conviction for possession with intent to distribute a controlled dangerous substance may ever be used to impeach a witness...." In *Dyce v. State, supra*, 85 Md.App. 193, 582 A.2d 582, we concluded that distribution of cocaine was not an infamous crime but found it unnecessary to determine whether it was a crime relevant to credibility, for we found that, even if it was, the probative value of its use in that case was clearly outweighed by its prejudicial impact. Dyce was on trial for possession of cocaine with intent to distribute, and so informing the jury of a prior conviction of a nearly identical crime was especially prejudicial.

The offense at issue is proscribed by Md.Ann.Code art. 27, § 286(a), which, in relevant part, states simply that it is unlawful for any person to distribute a controlled dangerous substance. Section 279 of art. 27 lists over 200 substances that it defines as controlled dangerous ones and adds to that list as well salts, isomers, derivatives, and compounds of or containing those substances. A person can violate § 286 by

selling a ton of cocaine to sub-dealers throughout a community as well as by giving a friend a marijuana cigarette. The unlawful distribution can occur in the privacy of one's home, in an open air drug market, furtively in the back of a car or in a dark alley, on a public street in broad daylight, or in the middle of a crowded grand ballroom of a downtown hotel. It may be part of a secret business enterprise or simply a gift to an acquaintance. The net is very large and encompasses a wide variety of conduct, and therein lies the problem.

The Court of Appeals addressed this very problem in *Ricketts v. State, supra*, 291 Md. 701, 436 A.2d 906, where it concluded that a conviction for indecent exposure could not be used for impeachment purposes. At 710, 436 A.2d 906, it noted that such a conviction "says little about the conduct for which the person was convicted." Continuing, the Court observed that "[b]ecause the offense requires only a general intent, the gamut of offenses and circumstances that fall within the ambit of the crime are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment perhaps dictated by necessity." Expounding on this further, the Court said, at 713, 436 A.2d 906:

> "If the crime is so ill-defined that it causes the factfinder to speculate as to what conduct is impacting on the defendant's credibility, it should be excluded. Stated differently, since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment."

The concern enunciated in *Ricketts* is equally justified here. Distribution of a controlled dangerous substance, even cocaine, does not, inherently and of itself, indicate that the person is not to be believed. The behavior is criminal, to be sure, but it is not necessarily dishonest. It does not necessarily involve surreptitious conduct or moral depravity sufficient to suggest a lack of credibility. It may, of course, but it need not.

Because the jury hears only the fact of the conviction and, if offered, any sentence that was imposed, it has no reliable indication of the precise nature of the offense and therefore is at liberty to assume the worst. *See Foster v. State,* 304 Md. 439, 470, 499 A.2d 1236 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986), approving the North Carolina view that "ordinarily one may not go into the details of the crime by which the witness is being impeached."

Drug distribution, even when engaged in for profit, is not necessarily surreptitious or furtive. According to the U.S. Department of Justice, there were nearly 112,000 convictions for drug trafficking in State courts in 1988 and at least another 13,000 for various drug law offenses in Federal courts. *See Sourcebook of Criminal Justice Statistics—1990,* U.S. Dept. of Justice, Tables 5.32 and 5.22. Many of these convictions, at least in State courts, are of low-level street dealers who are caught because they openly sell drugs to undercover police officers on public streets, sidewalks, and parking lots or are observed in such places openly selling to other passersby. We see the cases. There is simply no warrant to declare these offenses eligible for impeachment on the theory that they entail secretive behavior, and to do so on any other basis would be to broaden the Rule significantly beyond its limited reach and purpose.[2]

We conclude that distribution of a controlled dangerous substance is not a crime relevant to credibility and may not, therefore, be used under Rule 1–502 for impeachment purposes. See, in accord, *State v. Jarmon,* 245 Kan. 634, 783 P.2d 1267, 1269 (1989) and cases cited there. The court's ruling was in error, and, on the facts before us, we cannot declare

---

2. Judge Murphy, in dissent, recognizes that ordinarily the jury never gets to hear the details of the offense unless the witness chooses to try and mitigate the effect of the conviction but finds some significance in the proposition that the court, in determining admissibility, can inquire into those details. Even if that is so—and it is not at all clear that it *is* so—that doesn't solve the problem. As *Ricketts* makes clear, it is the crime itself, as defined in the law, that must have a special relevance to credibility, not the particular manner in which the crime was committed.

beyond a reasonable doubt that the error was harmless.  We therefore reverse.

JUDGMENT REVERSED;  KENT COUNTY TO PAY THE COSTS.

MOTZ, Judge, concurring.

This case presents an exceedingly difficult issue.  I agree with much in Judge Murphy's dissent.  I am particularly troubled that our holding here means that a conviction for distribution of a controlled dangerous substance is *never* admissible for impeachment purposes under Md.Rule 1–502.  There undoubtedly are occasions when permitting impeachment with such a conviction would be an abuse of discretion, for example, where the prior conviction involved "giving a friend a marijuana cigarette" or is identical to the present charge.  *See Dyce v. State,* 85 Md.App. 193, 200, 582 A.2d 582 (1986).

But, if we were writing on a clean slate, it would certainly be my view that a conviction of distribution of a controlled substance is admissible for impeachment purposes in at least some circumstances.  Indeed, it seems to me that this case involves such circumstances.  That is, it should be within the trial court's discretion to permit a defendant, accused of assault in 1992, who wishes to testify in his own behalf, to be impeached with a 1989 conviction for distribution of cocaine when that conviction resulted in a jail sentence and the defendant offers no proffer, or evidence, that the prior conviction was a minor infraction or involved no surreptitious conduct.  In other words, I believe that a conviction for distribution of a controlled substance falls within Judge McAuliffe's Category III, *see Prout v. State,* 311 Md. 348, 366, 535 A.2d 445 (1988) (McAuliffe, J. dissenting), and that a trial court should be able to determine, in a particular case, if the conviction is admissible for impeachment purposes.  That decision would, of course, be subject to review, and reversal, if admission in a particular case was an abuse of discretion.  *See, e.g., Dyce v. State, supra.*

We are not, however, writing on a clean slate. Like Chief Judge Wilner, I believe Court of Appeals' precedent requires reversal here. Accordingly, I reluctantly concur.

MURPHY, Judge, dissenting.

I agree that there is no merit in appellant's second complaint. I also agree that Md.Rule 1–502 creates a three-part test for determining whether a prior conviction is admissible for the limited purpose of impeachment. I dissent, however, from the holding that a conviction for distribution of cocaine may never be used for impeachment.

It is of no consequence that the trial judge might have been confused about how to decide whether appellant's prior conviction was relevant to credibility. Our task is to determine whether that decision was correct. *Joiner v. State,* 82 Md. App. 282, 293, 571 A.2d 844 (1990). I do not agree, however, that the trial judge appeared to be confused. When defense counsel argued that appellant's conviction was inadmissible under a different rule, it was the trial judge who announced that Rule 1–502 must be applied. As required by that rule, the trial judge first considered whether a conviction for distribution of cocaine is relevant to a witness's credibility.

The trial judge stated that distribution of cocaine is (1) a crime of morale turpitude; and (2) a felony. Those statements do not indicate confusion. It is reasonable to characterize distribution of cocaine as a crime of moral turpitude. See *Dental Examiners v. Lazzell,* 172 Md. 314, 320–321, 191 A. 240 (1937), and *Attorney Griev. Comm'n. v. Walman,* 280 Md. 453, 459–60, 374 A.2d 354 (1977). Distribution of cocaine is a felony. The maximum penalty for a first conviction of this offense is twenty (20) years and a fine of $25,000.00. Md.Ann. Code art. 27, § 286(b)(1).

A prior conviction is relevant if it has any tendency to establish that the witness lacks veracity. That determination involves a question of law. The judge was either right or wrong. In my opinion, he was right. A conviction for distribution of cocaine is relevant to a person's credibility.

Having correctly determined as a matter of law that distribution of cocaine is a crime which is "relevant to the witness's credibility," the trial judge proceeded to determine whether, *under the circumstances of this particular case,* the probative value of that conviction outweighed the danger of unfair prejudice to appellant. This case by case determination requires an exercise of discretion. The trial judge stated that he would have excluded the conviction if appellant were on trial for "a charge of distribution" of controlled dangerous substances. Appellant, however, was the defendant in a "one on one" assault case. The trial judge therefore ruled that he would (1) allow the prosecutor to question appellant about the distribution conviction, and (2) deliver a limiting instruction. I am not persuaded that these rulings constitute an abuse of discretion.

A trial judge is not bound by the formal rules of evidence when trying to figure out whether a particular item of evidence should be admitted or excluded. When urging the trial judge to prohibit the State from using the conviction to impeach appellant, defense counsel had the opportunity to, but did not, discuss the circumstances of that conviction. Appellant had superior knowledge of whatever unique or mitigating circumstances were involved in the prior conviction. If appellant's distribution conviction involved nothing more than handing a mirror with cocaine residue to a fellow attendee of a rock concert, this information should have been given to the trial judge.

Having made no attempt to supply the trial judge with any facts which would indicate that, *in this particular case,* the probative value of appellant's prior conviction did not outweigh the danger of unfair prejudice to him, appellant now suggests that the prior conviction might not have involved surreptitious conduct. We should not speculate that appellant "may have committed a very minor infraction indicative of nothing more than momentary poor judgment" or that his conviction did not involve proof of secretive conduct.

We do indeed see many drug cases, but of the cocaine *distribution* cases which come before the trial and appellate courts of this state, rare are the ones that do not involve surreptitious behavior. That 'appellant was sentenced "to prison" indicates that he was guilty of a serious violation of the controlled dangerous substances laws. There is simply no warrant to declare all cocaine distribution convictions ineligible for impeachment because a minuscule number of them may not entail secretive behavior.

In fairness to the witness who is impeached with proof of a conviction, the party who uses this mode of impeachment is prohibited from asking about the circumstances of the conviction. *State v. Watson,* 321 Md. 47, 55, 580 A.2d 1067 (1990). That prohibition, however, does not prohibit the witness from testifying about any mitigating circumstances which the fact-finder ought to consider in deciding how much impact the conviction has on the witness's credibility. During his testimony, appellant could have explained the circumstances of the conviction, "if in extenuation of the act and in mitigation of its effect." *Donnelly v. Donnelly,* 156 Md. 81, 86, 143 A. 648 (1928). No extenuating circumstances were mentioned.

Appellant also had an opportunity to further blunt the effect of the impeachment by showing that the court imposed an inconsequential punishment. *Foster v. State,* 304 Md. 439, 469–471, 499 A.2d 1236 (1985). Appellant did not tell the jury the exact length of his prison sentence. Appellant's strategic decision to forego these opportunities provides additional support for the proposition that the trial judge was correct when ruling that the State could cross examine appellant about his prior conviction for distribution of cocaine. I would affirm.