637 A.2d 859

Richard **WALLACH**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY.**

**No. 519, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Feb. 28, 1994.

Christopher L. Hamlin (Thomas E. Walker and Greenan, Walker, Steuart, Trainor & Billman, on the brief), Landover, for appellant.

Sheldon L. Gnatt and Roger C. Thomas (Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on the brief), Greenbelt, for appellee.

Before WILNER, C.J., and BISHOP and FISCHER, JJ.

FISCHER, Judge.

While operating a motorcycle, appellant, Richard Wallach, was injured in a collision with a bus owned by the Board of Education of Prince George's County (the "Board"). Wallach sued the Board in the Circuit Court for Prince George's County for his injuries suffered as a result of the accident. Appealing from a jury's verdict in favor of the Board, he raises the following issues:

1. Whether the trial court erred by admitting into evidence Wallach's prior conviction for conspiracy to distribute marijuana for the purpose of impeachment.

2. Whether the trial court erred by allowing an accident reconstruction expert to render an opinion regarding the maximum distance that the motorcycle was capable of traveling in a specified period of time.

Because we hold that the trial court erroneously admitted evidence of the prior conviction, we reverse the judgment and remand for a new trial. Although this issue is dispositive of the case, the ruling complained of in the second issue may recur on retrial; therefore, we address it in this opinion.

### FACTS

On November 23, 1987, Linda Marie Richardson ("Richardson"), a bus driver employed by the Board, was operating a school bus eastbound on Lanham–Severn Road in Prince George's County, Maryland. Wallach, driving a motorcycle, entered Lanham–Severn Road from a shopping center and headed westbound. The school bus approached the intersection of Lanham–Severn Road and 94th Avenue in order to make a left turn at the same time that Wallach approached the intersection on his motorcycle. As Wallach neared the intersection, the school bus began its turn, causing Wallach to swerve. Wallach collided with the rear of the bus and was knocked unconscious, sustaining serious injuries.

Wallach sued the Board and Richardson, alleging negligence against Richardson and seeking to hold the Board vicariously liable. The Board answered the complaint and filed a counterclaim charging Wallach with negligence. After the parties stipulated that Richardson was operating within the scope of her employment at all times, Wallach agreed to dismiss the claim against Richardson. After a full trial, the jury exonerated the Board and found Wallach negligent.

### I. IMPEACHMENT

Wallach contends that the trial court erred by admitting his prior conviction of conspiracy to distribute marijuana for the purposes of impeachment. Before trial, Wallach filed a motion *in limine* seeking to exclude the conviction from

evidence. The trial court denied the motion. After the trial court overruled Wallach's objection during cross-examination, the Board questioned Wallach about the conviction.

Wallach argues that the crime of conspiracy to distribute marijuana is too broad to be relevant to the credibility of the witness. In addition, he posits that, even if a conviction for conspiracy to distribute marijuana is admissible for impeachment purposes, in this case the prejudicial impact outweighed the probative value of admitting the conviction.

Whether a prior conviction for conspiracy to distribute marijuana may be admitted to impeach a witness is an issue of first impression in Maryland. Rule 1–502(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

In *Beales v. State,* 329 Md. 263, 619 A.2d 105 (1993), the Court of Appeals explained that the balancing test of Md. Rule 1–502(a) must be applied to infamous crimes and other crimes bearing on credibility. *Beales,* 329 Md. at 271, 619 A.2d 105. The crimes the common law considered infamous were treason, felony, perjury, forgery and those other offenses classified as *crimen falsi,* or misdemeanors involving dishonesty. *Prout v. State,* 311 Md. 348, 360, 535 A.2d 445 (1988).

Whether a particular crime may be used for the purposes of impeachment was addressed by this Court in *Carter v. State,* 80 Md.App. 686, 566 A.2d 131 (1989) and *Giddens v. State,* 97 Md.App. 582, 631 A.2d 499 (1993). *Carter* was decided under the common law prior to the adoption of Md.Rule 1–502(a). In *Carter,* we held that the admission, for impeachment purposes, of defendant's prior conviction for drug manufacturing was not an abuse of discretion. Carter was convicted of second degree murder, robbery with a dangerous and deadly

weapon, battery, carrying a weapon with the intent to injure, and theft. Carter contended that the trial judge erred by admitting, for impeachment purposes, evidence of Carter's conviction for manufacturing a controlled dangerous substance. *Carter,* 80 Md.App. at 692, 566 A.2d 131. Holding that Carter's conviction for manufacturing drugs was relevant to his credibility, we recognized that "[t]his particular crime necessarily requires several steps involving premeditation and conscious violation of the law" and is, therefore, relevant to the witness's veracity. *Carter,* 80 Md.App. at 693, 566 A.2d 131.

> We believe that drug manufacturing, on the other hand, is relevant to the issue of appellant's propensity to tell the truth. A person who has committed crimes that posed grave danger to the fabric of society, that only could have been carried on furtively, and that required him to take great pains to conceal his conduct, would probably not be adverse to concealing the truth if it is to his advantage to do so.

*Carter,* 80 Md.App. at 694, 566 A.2d 131.

In *Giddens v. State,* 97 Md.App. 582, 631 A.2d 499 (1993), *cert. granted,* 333 Md. 429, 635 A.2d 976 (1994), we held that the distribution of a controlled dangerous substance is not a crime relevant to credibility and may not be used for impeachment purposes. After being convicted for assault, Giddens appealed, arguing that the trial court erred by allowing the State to impeach his testimony with a prior conviction for distribution of cocaine under Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 286(a). We concluded that

> a person can violate § 286 by selling a ton of cocaine to sub-dealers throughout the community *as well as by giving a friend a marijuana cigarette.* The unlawful distribution can occur in the privacy of one's home, in an open air drug market, furtively in the back of a car or in a dark alley, on a public street in broad daylight, or in the middle of a crowded grand ballroom of a downtown hotel. It may be part of a secret business enterprise or simply a gift to an

acquaintance. The net is very large and encompasses a wide variety of conduct, and therein lies the problem.

*Giddens,* 97 Md.App. at 591, 631 A.2d 499. (Emphasis added). We then compared *Giddens* with *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981), in which the Court of Appeals concluded that a conviction for indecent exposure could not be used for impeachment purposes because such a conviction "says little about the conduct for which the person was convicted." *Giddens,* 97 Md.App. at 591, 631 A.2d 499 (*quoting, Ricketts,* 291 Md. at 710, 436 A.2d 906). The Court reasoned that "since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment." *Giddens,* 97 Md.App. at 591, 631 A.2d 499 (*quoting, Ricketts,* 291 Md. at 713, 436 A.2d 906). Chief Judge Wilner then stated that this concern was equally justified with respect to Giddens, because "[d]istribution of a controlled dangerous substance, even cocaine, does not, inherently and of itself, indicate that the person is not to be believed." *Giddens,* 97 Md.App. at 591, 631 A.2d 499.

Like distribution of a controlled dangerous substance, conspiracy to distribute marijuana is not a crime that inherently indicates that the witness is not to be believed. A criminal conspiracy is "the combination of two or more persons, who by some concerted action seek to accomplish some unlawful purpose, or some lawful purpose by unlawful means." *Mason v. State,* 302 Md. 434, 444, 488 A.2d 955 (1985). The crime of conspiracy is a misdemeanor at common law, *Jones v. State,* 8 Md.App. 370, 259 A.2d 807 (1969), and is not one of the infamous crimes referred to in Md.Rule 1–502(a). As a lesser crime, it is admissible for impeachment only if it bears on the credibility of the witness.

The crime of conspiracy includes a wide variety of behavior. One can conspire to commit murder, *Grandison v. State,* 305 Md. 685, 506 A.2d 580, *cert. denied,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh'g denied,* 479 U.S. 1001, 107 S.Ct. 611, 93

L.Ed.2d 609 (1986); conspire to violate narcotics laws, *Wilson v. State,* 8 Md.App. 653, 262 A.2d 91 (1970); or conspire to obtain money from insurer by false pretenses, *Townes v. State,* 314 Md. 71, 548 A.2d 832 (1988). Any felony or misdemeanor may be the object of a conspiracy. *Jones,* 8 Md.App. at 376, 259 A.2d 807. Moreover, a person can become involved in a conspiracy to distribute marijuana through any number of activities. A person may simply agree to carry out an act or a person may plan and arrange the entire conspiracy. Both actions may result in a conspiracy conviction. For example, if three people, A, B, and C, are at a rock concert and A gives B a marijuana cigarette, if B asks for and receives permission from A to give C the cigarette, there has been a conspiracy to distribute marijuana.

The crime of conspiracy is like that of possession of a controlled dangerous substance. Just as there are 200 substances defined as controlled dangerous substances, there are a plethora of crimes which can fall under the term "conspiracy;" therefore, a conspiracy "without more, says little about the conduct for which the person was convicted." Because the jury hears only that the witness was convicted of conspiracy, it has "no reliable indication of the precise nature of the offense and therefore is at liberty to assume the worst." *Giddens,* 97 Md.App. at 592, 631 A.2d 499. This case clearly turns on the credibility of Wallach as a witness. Wallach is the plaintiff in this case, and is one of three witnesses testifying on his behalf. The only other witness to testify for Wallach, about the accident, heard the accident but did not see it. Moreover, Richardson testified that she did not see Wallach or the accident. Wallach, therefore, is the only witness who can testify about the actual accident. Since impeaching evidence could be potentially fatal to his case, such evidence must have some impact on Wallach's credibility to be admissible. Because the factfinder, in this case the jury, lacks the basis to determine whether a conspiracy conviction impacts on the witness's credibility, the conviction is not admissible for impeachment purposes, and its admission constitutes reversible error.

## II. ACCIDENT RECONSTRUCTION

■ During the trial, the Board called Dr. Nicholas Perrone, to testify as an expert in accident reconstruction. He testified concerning Wallach's speed at the time of the accident. He provided this opinion based upon the acceleration capabilities of Wallach's motorcycle, using both the maximum acceleration capabilities and two-thirds of its capacity. This testimony occurred without any foundational facts.

Q: In the course of your investigation, did you make calculations of time, distance, and velocity, and acceleration for the school bus involved in the accident?

A: Yes, I did.

Q: Would you first please state what in summary those determinations were from those calculations?

Plaintiff's Attorney: Objection

The Court: Overruled.

Plaintiff's Attorney: Before he gets to the conclusions, I would ask that—I think it's foundation as to how the calculations are made might be appropriate.

The Court: I disagree. Overruled.

Dr. Perrone opined that Wallach's testimony concerning the speed of the motorcycle was inconsistent with the physical evidence and objective data Dr. Perrone obtained.

Q: Based upon your calculation and your analysis of the accident, do you have an opinion whether the testimony of the plaintiff—that he was operating his vehicle at a maximum speed within the speed limit of 40 is consistent with the physical evidence and the objective data you obtained?

A: No. It is not consistent.

Dr. Perrone then concluded:

Because if he were operating at that speed, he would have had adequate time to perceive of the vehicle turning and stopping. And if that were the case, he would have had adequate time to stop his vehicle and avoid the accident.

So, if indeed that was the case, he was just not looking straight ahead to see the bus, which was there to be seen for him.

■ Before an expert can offer opinion testimony, the testimony must be predicated in fact. We summarized the law in *Uhlik v. Kopec,* 20 Md.App. 216, 223–224, 314 A.2d 732 (1974):

> The requirement that an expert must predicate his opinion on a sufficient factual foundation seeks to avoid an opinion based on mere conjecture, speculation, or incompetent evidence. The premises of a fact on which the opinion is based need not, however, have been derived from personal observation. The opinion may be based on an assumed set of facts in the form of a hypothetical question. Thus, a witness, who has been qualified to express an opinion on a certain subject whether based on personal knowledge and observation or in response to a hypothetical question, must make clear the observed or assumed facts upon which the opinion is based.

Dr. Perrone's opinion was based on neither personal knowledge nor observation. The Board argues that Dr. Perrone was supplied with the requisite facts through hypothetical questions. Our reading of the record reveals that Dr. Perrone supplied many of the facts himself without the benefit of hypothetical questions. It is clear that there was no factual basis for Dr. Perrone's assertion that Wallach accelerated, either at a maximum capability or at two-thirds of the maximum speed. Because Dr. Perrone's testimony was based on neither direct evidence nor a hypothetical, it was not supported by the proper foundation and was, therefore, improper. This, of course, does not mean that such testimony would be improper if based upon a proper foundation.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

WILNER, Chief Judge, concurring.

I concur in the result reached by the panel majority because I agree that the trial court erred in allowing Dr. Perrone to testify to his opinion of Wallach's speed. I do not agree, however, that evidence of Wallach's prior conviction for conspiracy was necessarily inadmissible. I would hold the evidence of a prior conviction for conspiracy to be eligible for admission, subject to the balancing process required by Rule 1–502(a).

The gist of a criminal conspiracy is the unlawful agreement, not the object of the agreement. The agreement is one that necessarily anticipates, and indeed is devoted to, the commission of one or more illegal acts, and therefore contains an element of furtiveness and malevolent deliberation not necessarily implicit in the mere act of distributing controlled substances. The nature of the particular conspiracy can be considered in the balancing process. I do not regard this case as controlled by *Giddens v. State.*