REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 464
September Term, 2014

_____

IN RE GARY T.

_____

Kehoe
Arthur
Wilner, Alan M.
   (Retired,  Specially Assigned),

JJ.

_____

Opinion by Wilner, J.

_____

Filed: April 6, 2015

The Circuit Court for Prince George's County, sitting as a Juvenile Court, found appellant to be delinquent by reason of conduct which, if committed by an adult, would constitute second degree assault. The victim of the assault was A. Fofana.

BACKGROUND

Mr. Fofana was playing basketball at a neighborhood park. He had left some personal belongings, including his cell phone, on a nearby bench and tried to keep an eye on them as he was playing. He observed three individuals, including appellant and one Cameron P., standing near the bench watching the game. At some point, Fofana noticed that his cell phone was gone and saw appellant and Cameron walking away. He caught up with them and demanded that his phone be returned. Fofana claimed that, while he was talking with Cameron, appellant punched him in the head from behind, leaving him bloody and dazed, and that appellant and Cameron then left. A photograph was admitted showing injury to the right side of Fofana's face.

That much is essentially undisputed. Appellant's defense was one of self-defense. He testified that Fofana was the aggressor – that before any blows were struck, Fofana rifled through appellant's pockets and then threw the first punch, to which he responded. The court believed Fofana, largely because appellant's version was inconsistent with the nature of Fofana's injury. The court noted that appellant was right-handed and that, if appellant had hit Fofana while the two were facing each other, as he claimed, the injury would have been

to the left side of Fofana's face. The blow had to come from the rear, as Fofana testified. The court also doubted that appellant would have permitted Fofana to go through his pockets.

The sole issue in this appeal arises from appellant's attempt, during cross-examination of Fofana, to impeach Fofana's credibility by showing that, in November 2013 – some four months after the incident and four months before trial – Fofana had been convicted on a guilty plea of conspiracy to distribute marijuana. Relying largely on this Court's decision in *Wallach v. Board of Education*, 99 Md. App. 386, 637 A.2d 859 (1994), the court concluded that conspiracy to distribute marijuana was not an impeachable offense. The court also expressed doubt that, based on the evidence admitted to that point, "it's going to be that probative." On those bases, the court sustained an objection to the proffered evidence.

## DISCUSSION

Appellant acknowledges the *Wallach* decision but claims that it was at least tacitly overruled by the Court of Appeals in *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994) and that it is inconsistent with case law elsewhere in the country. The State's response is that (1) *Wallach* was not overruled in *Giddens,* (2) the trial court also based its decision on its finding that the probative value of the evidence would not outweigh the prejudice to Fofana from its admission, and (3) any error was harmless because the ultimate issue of appellant's "guilt" did not turn on Fofana's credibility.

Although *Wallach* and *Giddens* are the most relevant cases, they did not, like Athena, spring live (and fully armored) from the head of Zeus; there were precursors that informed the analysis undertaken in those cases. *Wallach* arose from a collision between a motorcycle, driven by Wallach, and a school bus. At least one issue was whether Wallach, the plaintiff, was negligent. During trial, in an effort to impeach Wallach's credibility as a witness, the defendant sought to establish that Wallach had been convicted of conspiracy to distribute marijuana. The trial court allowed the evidence, and ultimately the jury found for the defendant. In the appeal, Wallach claimed that conspiracy is not an impeachable offense because it has little relevance to credibility and that, in any event, the prejudice to him from its admission outweighed its probative value.

This Court reversed, holding that conspiracy to distribute marijuana was not an impeachable offense. The law governing impeachment by prior conviction, at the time, was Rule 1-502, in particular section (a), which read largely as Rule 5-609(a) does now, namely, that evidence of a conviction of a crime is admissible for the purpose of attacking the credibility of a witness, but only "if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party."[1]

---

[1] Rule 1-502 took effect January 1, 1991. It was drafted and approved to modify an existing statute. *See State v. Giddens, supra*, 335 Md. at 214-15, 642 A.2d at 875. Rule 5-609 took effect July 1, 1994, as part of its adoption of the Maryland Rules of Evidence (Title 5 of the Maryland Rules). It incorporated some style changes to former Rule 1-502 but substantively is the same.

The Court first concluded that conspiracy to distribute marijuana was not an "infamous crime" as defined in the common law or for purposes of Rule 1-502(a); the issue was whether it fell within the common law ambit of *crimen falsi* - a misdemeanor involving dishonesty. *Wallach* at 389, 637 A.2d at 860.

In that regard, the Court considered *Carter v. State*, 80 Md. App. 686, 566 A.2d 131 (1989) and *our* decision in *Giddens v. State*, 97 Md. App. 582, 631 A.2d 499 (1993). In *Carter*, which was decided prior to the adoption of Rule 1-502 and was based therefore on common law, we held that a conviction for *manufacturing* a controlled dangerous substance (CDS) was relevant to credibility because the offense "require[d] several steps involving premeditation and conscious violation of the law." *Carter*, 80 Md. App. at 694, 566 A.2d at 131. In *Giddens*, we reached a different conclusion with respect to *distribution* of CDS. Our conclusion there was based on the varied and significantly different ways in which that crime could be committed, some relevant to credibility and some not.

We noted in *Giddens* that a person could violate the law against distribution by selling a ton of cocaine to sub-dealers throughout the community or by giving a friend a marijuana cigarette, that the distribution could occur in the privacy of one's home, in an open air drug market, in the back of a car or on a public street, as part of a secret business enterprise or as a simple gift to an acquaintance. The net, we said, "is very large and encompasses a wide variety of conduct, and therein lies the problem." *Giddens*, 97 Md. App. at 591, 631 A.2d at 503. Because the issue is the truthfulness of the witness, "where there is no way to

-4-

determine whether a crime affects the [witness's] testimony simply by the name of the crime[,] that crime should be inadmissible for purposes of impeachment." *Id.* We pointed out that, in *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981), the Court of Appeals had held that a conviction for indecent exposure could not be used for impeachment purposes because the offense requires only a general intent and the circumstances falling within the ambit of the crime "are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment . . . ." *Id.*

In *Wallach*, we found the concern noted in *Giddens* and *Ricketts* to be equally applicable to *conspiracy* to distribute CDS. Like distribution of a CDS, we said, "conspiracy to distribute marijuana is not a crime that inherently indicates that the witness is not to be believed." *Wallach*, 99 Md. App. at 391, 637 A.2d at 861. We observed that the crime of conspiracy also includes a wide variety of behavior – that any crime can be the object of a conspiracy, which is nothing more than an agreement to commit the crime, and that it can be committed in a variety of ways. A conspiracy, without further definition of what the conspiracy was, fails to inform the trier of fact anything about whether the particular conduct suffices to cast doubt on the witness's credibility. On that basis, a majority of the panel held that the trial court erred in allowing the evidence.[2]

---

[2] One judge, concurring, disagreed that the evidence was inadmissible *per se,* but believed that it might be inadmissible under a balancing of probative value against undue prejudice.

*Wallach* was decided in February 1994. In June of that year, the Court of Appeals, having granted *certiorari* in *Giddens*, reversed this Court's judgment in that case. The Court of Appeals found the analysis in *Carter v. State, supra*, which concerned manufacturing CDS persuasive and concluded that "an individual convicted of cocaine distribution would be willing to lie under oath." *Giddens*, 335 Md. at 217, 642 A.2d at 876. It noted, in that regard, the comment made in *United States v. Ortiz*, 553 F.2d 782, 784 (2nd Cir. 1977), *cert. denied*, 434 U.S. 897, 98 S. Ct. 277, 54 L. Ed.2d 183 (1977) that "a narcotics trafficker lives a life of secrecy, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Giddens, id.* The Court recognized that, "in theory, some activity falling within the definition of drug distribution would not be probative of an individual's lack of veracity," but concluded that "the vast majority of convictions for cocaine distribution are relevant to credibility." *Id.* at 218, 642 A.2d at 876.

The Court of Appeals's *Giddens* decision certainly undercut this Court's reliance on *its Giddens* analysis in *Wallach* but, contrary to appellant's argument, we do not view the high court's *Giddens* decision as tacitly (and certainly not directly) overruling *Wallach*. Indeed, in its *Giddens* Opinion, the Court of Appeals cited *Wallach*, along with *Ricketts*, as an example of crimes that "have little or no bearing on credibility and consequently are not admissible for impeachment purposes." *Giddens*, 335 Md. at 215, 642 A.2d at 875.

*Wallach* obviously did rely, at least in part, on this Court's decision and analysis in *Giddens*, but the thrust of the Court of Appeals's conclusion was that the crime of CDS

-6-

distribution – the crime itself – was sufficiently clear and relevant to credibility, at least in the majority of cases, to be admissible for impeachment purposes. The Court accepted the assumption that most people who distribute cocaine would be willing to lie under oath, including about matters having nothing to do with the conviction. We, of course, are bound by that assumption as it pertains to the crime of distributing CDS. Whether a similar assumption can be made about the crime of conspiracy requires further analysis.

Part of the problem – indeed, the heart of the problem – is describing the crime for purposes of its use as impeachment evidence. Conspiracy in Maryland is a common law misdemeanor, the sentence for which cannot exceed the maximum punishment for the offense that is the objective of the conspiracy. *Johnson v. State*, 362 Md. 525, 528, 766 A.2d 93, 94 (2001); Md. Code, Crim. Law Art. § 1-202. The essence of the crime is an agreement to achieve some unlawful purpose – *any* unlawful purpose – or to employ unlawful means – *any* unlawful means – to achieve a lawful purpose. *State v. Johnson*, 367 Md. 418, 788 A.2d 628, 632 (2002); also *State v. Payne*, 440 Md. 680, 712, 104 A.3d 142, 161 (2014). The crime is complete when the agreement is reached; it does not require that anything be done to implement the agreement. As noted in *Townes v. State*, 314 Md. 71, 75, 548 A.2d 832, 834 (1988) and confirmed most recently in *State v. Payne,* 440 Md. at 713, 104 A.3d at 161 :

> "The essence of a criminal conspiracy is an unlawful agreement.
> The agreement need not be formal or spoken, provided there is
> a meeting of the minds reflecting a unity of purpose and design.
> In Maryland, the crime is complete when the unlawful

agreement is reached, and no overt act in furtherance of the agreement need be shown."

One constant in a prior- conviction impeachment analysis, in Maryland jurisprudence, is that the court must look only at the elements of the crime essential to a conviction and may not consider the particular facts that led to the conviction. In part, at least, that is to avoid the prospect of a trial-within-a-trial. The only information allowed are the name and date of the conviction and the sentence imposed. *State v. Giddens*, 335 Md. 205, 222, 642 A.2d 870, 878 (1994). The name of the crime itself must identify the conduct of the witness that tends to show that he or she is unworthy of belief. *See Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981); *State v. Westpoint*, 404 Md. 455, 480, 947 A.2d 519, 534 (2008). In many, perhaps most, cases, the name of the crime suffices, by judicial construction, to allow such a determination, but whether conspiracy falls within that category necessarily depends on the objective of the conspiracy.

If what is proffered is that the witness was convicted of conspiracy – an agreement to achieve some unlawful purpose or some lawful purpose in an unlawful manner -- without any indication of what the witness conspired to do, the crime is so amorphous and diverse as to make it impossible for the trier of fact to determine whether the conviction has any relation to the witness's credibility, unless the Court is willing to assume that a person who enters into *any* agreement to do *anything* unlawful would likely commit perjury in *any* case in which he or she was called to testify. That is an assumption we are unwilling to make and do not believe that the Court of Appeals decision in *Giddens* requires us to make.

-8-

That is not, however, the full nature of the crime. A person may not be properly

charged, or convicted, upon an allegation or proof that he or she entered into an agreement

to achieve some undefined unlawful purpose or to achieve a lawful purpose by some

undefined means. Article 21 of the Maryland Declaration of Rights provides that in all

criminal prosecutions, the defendant has a right to be informed of the accusation against him

or her. Among the purposes of that requirement is:

> "(1) putting the accused on notice of what [he or she] is called
> upon to defend by characterizing and describing the crime and
> conduct; (2) protecting the accused from a future prosecution for
> the same offense; (3) enabling the accused to prepare for trial;
> (4) providing a basis for the court to consider the legal
> sufficiency of the charging document; and (5) informing the
> court of the specific crime charged so that, if required, sentence
> may be pronounced in accordance with the right of the case."

*Edmund v. State*, 398 Md. 562, 576, 921 A.2d 264, 272 (2007), quoting from *Williams v.*

*State*, 302 Md. 787, 791, 490 A.2d 1277, 1279 (1985).

A person may not be charged in Maryland simply with "conspiracy." To comply with

Article 21, the charge must include the objective of the conspiracy, and, in order for there to

be a valid conviction, the evidence must establish that objective. Otherwise, none of the five

stated purposes of Article 21 could be achieved. If the conspiracy is to commit a particular

crime, that crime must be identified, and we can take judicial notice that that is how

conspiracies are, in fact, charged and that is how judgments of conviction must be

articulated. Even apart from Article 21, including the objective of the conspiracy as an

element of the crime as charged is required by Md. Code, Crim. Law Art. § 1-202. Absent

proof of that objective, the court would be unable to implement the requirement that the sentence, upon conviction, not exceed the maximum sentence for the offense that is the objective of the conspiracy.

This necessarily carries over to the use of conspiracy convictions for impeachment purposes. Some guidance in this regard is provided by Federal Rule 609.

Rule 5-609(a) was derived from Federal Rule of Evidence 609(a), as that Rule existed in 1994. In 2006, section (a)(2) of the Federal Rule was rewritten. Under section (a)(1) of the current Federal Rule, evidence of a crime punishable by death or imprisonment for more than one year (i) *must* be admitted in a civil case or a criminal case in which the witness is not a defendant, subject to a Rule 403 balancing of probative value against unfair prejudice, confusion, or delay, and (ii) *must* be admitted in a criminal case in which the witness *is* a defendant if the probative value outweighs its prejudicial effect to that defendant. Under section (a)(2), evidence of *any* crime, regardless of punishment, *must* be admitted if the court can readily determine that establishing the elements of the crime require proving – or the witness's admitting – a dishonest act or false statement.

A Note to Rule 609(a)(2) by the Federal Advisory Committee on the Rules of Evidence states that the Rule mandates the admission of a conviction "only when the conviction required the proof of (or in the case of a guilty plea, the admission of) an act of dishonesty or false statement. Evidence of all other convictions is inadmissible under this subsection, irrespective of whether the witness exhibited dishonesty or made a false

-10-

statement in the process of the commission of the crime of conviction." Rule 609, 2006 amendments. The Advisory Committee observed that the Congressional Conference Committee "provided that by 'dishonesty and false statement' it meant 'crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the [witness's] propensity to testify truthfully."[3]

Although textually different from the Maryland Rule, the Federal Rule, with the 2006 amendments, is not too different, at least in intent, from the Maryland jurisprudence. The Advisory Committee Note states:

> "The [2006] amendment requires that the proponent have ready proof that the conviction required the factfinder to find, or the defendant to admit an act of dishonesty or false statement. Ordinarily, the statutory elements of the crime will indicate whether it is one of dishonesty or false statement. Where the deceitful nature of the crime is not apparent from the statute and the fact of the judgment – as, for example, where the conviction simply records a finding of guilt for a statutory offense that does not reference deceit expressly – a proponent may offer information such as an indictment, a statement of admitted facts, or jury instructions to show that the factfinder had to find, or the defendant had to admit, an act of dishonesty or false statement in order for the witness to have been convicted."

As we have noted, Maryland law does not permit the proponent of prior conviction evidence to proffer anything more than the name of the crime and the date of conviction, but,

---

[3] The Federal Rules of Evidence are subject to approval by Congress.

as we also have observed, by requiring that the objective of the conspiracy be charged and be part of the judgment of conviction, the name of the crime will include that objective and so inform the court and the ultimate trier of fact what it was the witness had agreed to do.

That provides the missing link and, with that link, provides a clear and rational standard for determining whether the conspiracy of which the witness was convicted suffices as an impeachable offense. If, for purposes of Rule 5-609, the crime that the witness had agreed to commit is an infamous one or one that is relevant to the witness's credibility and thus would qualify as an impeachable offense, the conspiracy to commit that crime should as well. Indeed, a conscious agreement to commit that crime, if anything, may have a greater bearing on credibility than the actual commission of the crime, as it ordinarily would indicate some evil forethought and planning.

*Wallach* was decided before the long debate over the extent to which prior convictions should be usable as impeachment evidence had come close to running its course. One writer has observed that Federal Rule 609 "engendered more debate in Congress than any other single rule of evidence, and the final result was a conference compromise settling the differences between the House and Senate versions" (Michael Graham, *Handbook of Federal Evidence*, 3rd ed. (1991), at 473), and that debate did not end with the adoption of Rule 609. The Federal Rule was substantively amended in 1990 and 2006, and the debate continued in Maryland well into the 1990s.

We have the benefit now of 23 years of experience since the adoption of Rule 1-502 and more than 20 years since the adoption of Rule 5-609. We have the benefit of the Court of Appeals decision in *Giddens* and guidance from the 2006 amendments to the Federal Rule. The flat-out ruling in *Wallach* that conspiracy to distribute CDS is not an impeachable offense is no longer sustainable. As we have noted, whether a conviction for conspiracy falls within the category of convictions usable for impeachment purposes (subject to balancing of probative value against unfair prejudice) depends on the objective of the conspiracy. The Court of Appeals made clear in its *Giddens* Opinion that distributing CDS is relevant to credibility and therefore is an impeachable offense. So, therefore, is a conviction of conspiracy to distribute such a substance. The trial court understandably relied on *Wallach* in deciding to the contrary, but, under our new analysis, it was wrong in doing so.

We turn then to the State's alternative arguments – that the trial court also excluded the evidence based on a balancing of probative value against unfair prejudice and that, because its adjudication of appellant as a delinquent did not turn on Fofana's or appellant's credibility, any error in excluding the evidence was harmless.

The harmless error argument has no merit whatever. Appellant and Fofana told two very different stories regarding the encounter. The judge clearly believed Fofana's version and not appellant's. That was quintessentially a credibility determination. With respect to the balancing, Rule 5-609(a) requires, as a condition of admissibility, that the court determine "that the probative value of admitting the evidence outweighs the danger of unfair prejudice

to the witness or the objecting party." As we have indicated, the court first concluded that, based on the cases cited – *Wallach* and *Giddens* – conspiracy was not an impeachable offense, but it also stated that "with what's been testified to so far, I don't think it's going to be that probative so I sustain the objection."

In this juvenile delinquency case, the judge was the trier of fact. His belief that the conviction was not going to be "that probative" we take as the equivalent of a finding that any minimal probative value it might have would not outweigh any prejudice to the witness or the State, and we find no abuse of discretion in that determination. We therefore conclude that the disallowance of the evidence was not in error and shall affirm the judgment.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.