THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST WASHINGTON, Defendant-Appellant.

Third District   No. 79-227

Opinion filed June 30, 1980.

Robert Agostinelli and Karen Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

In this appeal by the defendant, Ernest Washington, from his conviction for the unlawful delivery of a substance containing heroin, only one issue is raised. That issue is whether the trial court abused its discretion by improperly admitting for impeachment purposes evidence of the defendant's prior convictions of the unlawful delivery of a

controlled substance and the unlawful possession of a controlled substance.

While the defense objected to the admission of this evidence, the alleged error was not included in the defendant's post-trial motion. As a result, the State argues that the defendant has waived the consideration of this issue on review.

■■ As a general rule, the failure to include an issue in a post-trial motion constitutes a waiver of that issue for purposes of review unless the error complained of deprived the defendant of a fair and impartial trial. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, there has been a relaxing of this rule where the issue not raised in the post-trial motion had been brought to the trial court's attention otherwise, had been ruled upon by the trial court, and where the defendant would be prejudiced in the event his contention of error is established as well founded. See *People v. Taylor* (1978), 66 Ill. App. 3d 907, 384 N.E.2d 558; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.

To determine whether the defendant could be prejudiced by the alleged error, the evidence presented at trial must be examined.

The matter proceeded to trial on February 12, 1979, where Teresa Morris, a special agent for the Illinois Department of Law Enforcement, testified that she was working as an undercover agent in Peoria on September 6, 1978. On that date, at approximately 9:55 p.m., she and Agent James Williams, also of the Illinois Department of Law Enforcement, drove to the area of 815 Brotherson Street in Peoria. Upon arriving there, Morris got out of the car, walked up to the building located at 815 Brotherson, and knocked on a window. The shade was pulled back, and a young woman known to Morris as Ida Mae Williams came to the window. After exchanging greetings with Ms. Williams, Morris asked her if Toolum was there. Ms. Williams replied that he was and left the window. Toolum, whom Morris identified as the defendant, came to the window, and Morris then asked him what he had available. He replied 50 cents, which Morris explained was a street term used in the narcotics field to describe $50 packets of heroin. When asked by Toolum whether she wanted to take the heroin with her, Morris told him she had someone waiting and pointed to Williams in the undercover car. Morris then handed $50 to Toolum through a hole in the screen. Toolum then left the window area, and Ida Mae Williams returned and spoke to Morris for a few minutes. Then Ms. Williams disappeared from the window for a short time and returned with a small tinfoil packet which she passed to Morris through a hole in the screen. Morris further testified that she had been in the apartment on two prior occasions, on August 24 and August 31, that the kitchen area of the apartment was behind the window, and that she had been introduced to Toolum on August 24 in the kitchen area

of the apartment by a confidential informant. This testimony was corroborated by James Williams.

For the defense, Kathy Scott, the defendant's sister, testified that she was with her brother on September 6, 1978, roughly from 6 p.m. to 10:45 p.m. at her birthday dinner held at her mother's house at 2008 West Butler in Peoria. She stated that the defendant was at the party the entire time she was there and that she knew he could not have left at 9:45 because he was at the party when she left at quarter to 11. Guy Washington, the defendant's 62-year-old father, also testified and corroborated Kathy Scott's testimony.

The defendant also testified. He stated that Ida Green, also known as Ida Williams, was an ex-girlfriend. He denied being at Ida Williams' apartment on September 6, 1978. On that date he was at a combination birthday-going away party at his father's house for his sister, Kathy Scott, who was leaving town the following Friday to take her son on a trip. He was there from approximately 5:30 p.m. until about 2:30 in the morning. Afterwards, he went to sleep in his room at his father's house where he also resided.

The defendant denied ever seeing or meeting Teresa Morris prior to trial. In particular, he denied meeting her on August 24, 1978, or being introduced to her by anyone. He stated that he would remember if he had met Morris because it was unusual for a white woman to be in the Warner Homes Apartments. He had never seen a white woman in Ida Williams' apartment. Furthermore, the last time he had been to Ida Williams' apartment was August 1, 1978.

■■ It is obvious that the credibility of each witness, as determined by the jury, was a key factor in the finding of guilty. There can be no question, therefore, that if the defendant's contention of error is shown to be well founded, he would have been prejudiced thereby. In fairness, then the issue must be considered.

■■ When considering the issue of the admissibility of prior convictions for impeachment, analysis must always start with a discussion of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, a landmark decision in Illinois. There our supreme court adopted then proposed Rule 609 of the Federal Rules of Evidence and the reasoning of Judge, now Chief Justice, Burger in *Gordon v. United States* (D.C. Cir. 1967), 383 F.2d 936, as the law of Illinois. Proposed Rule 609 stated, in relevant part:

> "(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless

(3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (47 Ill. 2d 510, 516.)

In determining whether the probative value of the conviction outweighs the prejudicial effect, the trial court must examine four factors: (1) the nature of the prior crime; (2) the nearness or remoteness in time of the conviction to the present time; (3) the subsequent career of the defendant; and (4) whether the prior crime was similar to the one charged. (*People v. Spates* (1979), 77 Ill. 2d 193.) However, the trial judge is not required to make an express evaluation of each of these factors in open court, for a reviewing court will assume the trial judge gave appropriate consideration to the relevant factors. *People v. Graham* (1975), 27 Ill. App. 3d 408, 327 N.E.2d 261.

Easily disposed of are the defendant's contentions concerning factors two and three. The defendant contends that the proximity in time of the defendant's prior convictions gives the prejudicial impression of continuous illegal conduct on the part of the defendant. The defendant's prior convictions occurred in August 1977 and December 1975. His trial took place in February 1979. In *People v. Siebert* (1979), 72 Ill. App. 3d 895, 390 N.E.2d 1322, it was found that the defendant's prior California conviction was used more to show a propensity to commit a crime because, among other factors, the offense underlying the prior conviction was committed only two weeks after the offense in Illinois and the prosecutor emphasized the proximity of the offenses in closing argument. While the defendant's conviction for the unlawful delivery of a controlled substance was reversed because the offense underlying his prior conviction occurred within two weeks of the offense for which he was charged and was nearly identical to the Illinois offense, the defendant having been convicted in California of the possession of marijuana for sale, no prejudice was found in the admission of this offense in regard to the defendant's conviction for attempt murder. We must conclude, therefore, that proximity in time was not the determinative factor in *Siebert.*

In the case at bar, there is no indication from the record of when the offenses underlying the defendant's prior conviction occurred. However, the convictions were not so proximate in time to the defendant's trial or to the commission of the present offense as to render the evidence inadmissible for impeachment of the defendant.

The third factor to be considered is the defendant's career subsequent to the convictions sought to be admitted at the trial. Subsequent to the defendant's 1975 conviction, he was again convicted in 1977. It can not be said that, as a matter of law, the failure of the defendant to get into trouble with the law from August 1977 until the

commission of the present offense in September 1978 was such a significant period of good behavior as to render evidence of these convictions inadmissible.

In *Montgomery*, it was pointed out that a 21-year-old conviction was inadmissible in that it bore no rational relationship to the defendant's present credibility. By adopting Rule 609, the court in *Montgomery* established that, if a period of 10 or more years had elapsed since the date of the prior conviction or release of the witness from confinement, whichever is later, the conviction has lost its relevance to the issue of credibility. As a corollary, convictions less than 10 years old may certainly be probative of credibility and prior convictions as old as 4 or 5 years have been determined to be so. See *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563; *People v. Belvedere* (1979), 72 Ill. App. 3d 998, 390 N.E.2d 1230; *People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196; *People v. Graham* (1975), 27 Ill. App. 3d 408, 327 N.E.2d 261; *People v. Dee* (1975), 26 Ill. App. 3d 691, 325 N.E.2d 336.

As for the nature of the prior offense, Illinois courts have consistently determined that a conviction for the unlawful possession or delivery of controlled substances would be the type of conviction which would be probative of credibility and would afford a basis for impeaching credibility. *People v. Sawyer* (1971), 48 Ill. 2d 127, 268 N.E.2d 689; *People v. Belvedere* (1979), 72 Ill. App. 3d 998, 390 N.E.2d 1239; *People v. Ramey* (1979), 70 Ill. App. 3d 327, 388 N.E.2d 196; *People v. Nelson* (1975), 31 Ill. App. 3d 934, 335 N.E.2d 79.

Our examination of the factors enumerated in *Spates* shows that the probative value of defendant's conviction was not substantially outweighed by the danger of unfair prejudice. Therefore, there was no error in admitting the prior convictions of the defendant in the instant case for impeachment of the defendant as a witness.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.