642 A.2d 870

**STATE of Maryland**

v.

**Dale GIDDENS.**

**No. 148, Sept. Term, 1993.**

Court of Appeals of Maryland.

June 10, 1994.

Gary Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

This case involves Maryland Rule 1–502, which governs the admissibility of prior convictions for impeachment purposes. It provides in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if [ (1) ] the crime was an infamous crime or other crime relevant to the witness's credibility and [ (2) ] the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party." [1]

We granted certiorari to consider whether a three-year old conviction for distribution of cocaine may be used to impeach a witness's credibility under Rule 1–502.[2]

I

By a statement of charges filed on May 11, 1992 in the District Court of Maryland sitting in Kent County, the State

---

1. Rule 1–502 also contains other limitations. Subsection (b) states that "[e]vidence of a conviction under this Rule is not admissible if a period of more than 15 years has elapsed since the date of the conviction." Subsection (c) provides that evidence of a prior conviction shall be excluded if (1) the conviction has been reversed or vacated; (2) the conviction has been the subject of a pardon; or (3) the conviction is the subject of a pending appeal.

2. On July 1, 1994, when the new Rules of Evidence become effective, Rule 1–502 will be replaced by Rule 5–609, which is virtually identical to Rule 1–502.

charged Dale Giddens, with assault. On July 17, 1992, upon Giddens's demand for a jury trial, the case was transferred to the Circuit Court for Kent County. The one-day trial took place on November 19, 1992. As summarized by the Court of Special Appeals, the State put forth the following evidence:

"James Coleman, the victim, testified that, on the evening of May 7, 1992, he was using a public telephone to converse with ... Rhonda Thorpe ... when [Giddens] drove up across the street, parked his car, and approached him. While still in the middle of the street, [Giddens] pulled out a black pistol and asked when Coleman was going to get off the phone. Coleman said that, although he knew it was a gun that [Giddens] had, he asked 'is that a gun you are pointing at me?' to which [Giddens], who was about three feet away, replied 'yes, it is. Do you have an f-ing problem with it?' At that point, Coleman ended his conversation and walked to [Ms. Thorpe's] house, leaving [Giddens] at the phone booth. Coleman said that he did not know [Giddens] at the time but learned his identity later. He stated that some time after the incident, he passed [Giddens] on the street, that [Giddens] told him that he did not have to say anything against [Giddens] in court, and that he should not have been on the corner in any event 'because it is a drug infested corner.' Coleman identified [Giddens] in court as the person who accosted him.

"Ms. Thorpe provided some corroboration for Mr. Coleman's story. The heart of her testimony was the statement: 'I was talking to [Coleman], and all I heard was "Have you got a problem with that?" [Coleman] says, "Is that a gun you are holding?" . . . .' That was the State's case."

Giddens denied the entire incident, claiming that Coleman had identified the wrong person. Consequently, as the intermediate appellate court said, the issue before the jury was purely one of credibility: should it believe Coleman or Giddens?

After the State presented its case, Giddens stated his intention to testify. At that point, the prosecutor indicated

that she planned to impeach Giddens's testimony with a 1989 conviction for distribution of cocaine. Giddens objected, arguing that drug distribution was not an "infamous" crime nor was it a crime that had any bearing on credibility; thus, he contended that the conviction was inadmissible. The State's reply was that the crime was a felony and involved "moral turpitude"; thus, it averred that the conviction was admissible to impeach Giddens's credibility.

After noting that Rule 1–502 controls the admissibility of prior convictions for impeachment purposes, the court ruled as follows:

"The question is whether it would be a crime of moral turpitude. It is a felony. Therefore, he has been convicted of a felony, which requires felonious intent to commit the offense—in this case, distribution of a controlled dangerous substance. The Court finds that that is . . . conduct which is base or vile and contrary to the accepted and customary conduct between men. Therefore, I find that it is a crime of moral turpitude.

"Next, I need to determine . . . whether or not its probative value of admitting the evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

"In this case, the offense for which he is being tried is a battery, which has no relationship to distribution of a controlled dangerous substance. I find that I will give a cautionary instruction and instruct them as to how they can utilize it. But I believe that the probative value of admitting the evidence outweighs the danger of unfair prejudice in view of the charges in this case. If this were a charge of distribution of a controlled dangerous substance, I would have a different finding. But in view of the charges and the difference, I will permit [the introduction of the conviction] over objection."

Following this ruling, Giddens testified and admitted on direct examination that in 1989 he had been convicted of distribution of cocaine and that he had gone to prison. At the close of all the evidence, the court instructed the jury that it

could consider Giddens's prior conviction in deciding whether he was telling the truth, but not for any other purpose.

The jury found Giddens guilty of assault; he was sentenced to 15 years incarceration, with all but eight years suspended, and five years supervised probation upon release. Giddens appealed to the Court of Special Appeals; that court, by a divided 2–1 vote, reversed the judgment, of the circuit court. *See Giddens v. State,* 97 Md.App. 582, 631 A.2d 499 (1993).[3] In his opinion, Chief Judge Wilner first described the operation of Rule 1–502, explaining that "admissibility is *not* determined by whether the crime in question is a felony or by whether it involves moral turpitude." *Id.* at 588, 631 A.2d 499 (emphasis in original). He continued: "although moral turpitude was once a relevant consideration in determining what crimes were usable as impeachment material, the Court of Appeals expressly departed from that standard in *Prout v. State,* 311 Md. 348, 535 A.2d 445 (1988) [ (plurality opinion) ]." 97 Md.App. at 589, 631 A.2d 499. Rather, Judge Wilner observed that a prior conviction is only admissible for impeachment purposes if it is an "infamous crime" or an "other crime relevant to the witness's credibility." *Id.* at 588, 631 A.2d 499.

It was then explained that the primary issue before the court was whether the offense of distribution of cocaine fell within the category of an "other crime relevant to the witness's credibility." *Id.* at 589, 631 A.2d 499. After noting that simple possession of controlled dangerous substances is not a crime relevant to credibility, Judge Wilner held that distribution of cocaine is similarly not relevant to credibility. He pointed out that distribution could entail a person selling a ton of cocaine throughout the community or it could encompass a friend giving another friend a marijuana cigarette. From this, he concluded that the name of the offense says very little about the conduct for which the person was convicted. *Id.* at

---

3. There were three separate opinions written by the intermediate appellate court—the decision rendered by Chief Judge Wilner, a concurrence by Judge Motz, and a dissent authored by Judge Joseph Murphy.

590–91, 631 A.2d 499. Therefore, he believed that the crime was so "ill-defined" that a jury would have difficulty determining the precise nature of the offense and would likely assume the worst. *Id.* at 591–92, 631 A.2d 499. He also found it noteworthy that drug distribution "does not necessarily involve surreptitious conduct or moral depravity sufficient to suggest a lack of credibility." *Id.* at 591, 631 A.2d 499. Consequently, Judge Wilner held for the majority that "distribution of a controlled dangerous substance is not a crime relevant to credibility and may not . . . be used under Rule 1–502 for impeachment purposes." *Id.* at 592, 631 A.2d 499.

Judge Motz "reluctantly" concurred in the result. She said that she was "troubled" by the holding "that a conviction for distribution of a controlled dangerous substance is *never* admissible for impeachment purposes under Md.Rule 1–502." *Id.* at 593, 631 A.2d 499. (emphasis in original). Nevertheless, she concurred with Chief Judge Wilner because she believed that our precedent required that result.

In his dissenting opinion, Judge Joseph Murphy stated his belief that "[a] conviction for distribution of cocaine is relevant to a person's credibility." *Id.* at 594, 631 A.2d 499. He also suggested that if a particular prior cocaine distribution conviction had no bearing on a witness's credibility, the witness could relate the circumstances of the conviction. *Id.* at 595, 631 A.2d 499. Specifically, he stated that if Giddens's prior "distribution conviction involved nothing more than handing a mirror with cocaine residue to a fellow attendee of a rock concert, this information should have been given to the trial judge." *Id.* In essence, Judge Murphy appeared to be advocating that a trial judge could, upon a request by a defendant, examine the circumstances of the prior conviction to determine if it had a bearing on credibility. He concluded that, because Giddens did not put forth any evidence that the prior cocaine distribution conviction was a minor violation that had no bearing on credibility, the trial court's decision to admit the conviction was correct. The State appealed and we granted its petition for certiorari.

## II

Before us, the State reasserts its contention that a prior conviction for distribution of cocaine is relevant to credibility. It does not suggest that cocaine distribution is an infamous crime, but rather maintains that the offense is an "other crime relevant to the witness's credibility" and as such is admissible for impeachment purposes under Rule 1–502. In addition, the State argues that the crime of cocaine distribution has a commonly understood meaning and is not so "ill-defined" that the fact finder would be put in a position of speculating what the witness did to be convicted of the crime. It urges us to reverse the Court of Special Appeals' judgment and reinstate the judgment of the Circuit Court for Kent County.

Giddens maintains that a prior conviction for drug distribution is irrelevant to credibility. He points to the definition of the crime and concludes that there is nothing in the definition that requires any degree of stealth, surreptitiousness, secretiveness, or effort to avoid detection. He also contends that the crime of drug distribution encompasses so broad a spectrum of behavior as to bring within its ambit conduct that is not probative at all of a person's credibility. For example, Giddens argues, handing a marijuana cigarette to a friend at a party or sharing a small quantity of cocaine falls within the definition of drug distribution but says nothing about an individual's veracity.

Giddens further claims that practical problems would arise if a prior conviction for drug distribution could be used to impeach a witness. He notes that, because some types of drug distribution may reflect on a witness's credibility, while other instances of drug distribution have no bearing on a witness's veracity, trial judges would need to look beyond the name of the offense to determine if the prior conviction was relevant to credibility. Giddens claims that mini-trials, where trial judges attempt to parse out the underlying facts of the prior conviction, would routinely occur. According to Giddens, such a result would encourage judicial inefficiency and would be inconsistent with our prior decisions which hold that only

the name of the offense and the sentence imposed be introduced for impeachment purposes. Therefore, he asks us to affirm the judgment of the Court of Special Appeals and rule, as a matter of law, that drug distribution is not probative of a lack of veracity.

### III

Rule 1–502 essentially creates a three-part test for determining whether prior convictions may be admitted for impeachment purposes. First, subsection (a) sets forth the "eligible universe" for what convictions may be used to impeach a witness's credibility. This universe consists of two categories: (1) "infamous crimes" and (2) "other crimes relevant to the witness's credibility." [4] Infamous crimes include treason, common law felonies, and other offenses classified generally as *crimen falsi*.[5] *See Morales v. State*, 325 Md. 330, 338, 600 A.2d 851 (1992); *Prout, supra*, 311 Md. at 360, 535 A.2d 445. If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. This threshold question of whether or not a crime bears upon credibility is a matter of law. *See Prout, supra*, 311 Md. at 365–66, 535 A.2d 445 (Eldridge, J., and Smith, J., concurring); *id.* at 367, 535 A.2d 445 (McAuliffe, J., and Murphy, C.J., dissenting).[6]

---

**4.** We reaffirm our statement in *Prout, supra*, 311 Md. at 360–61, 535 A.2d 445, that the label of "moral turpitude" does not describe a class of crimes that are admissible for impeachment purposes. Therefore, the term "moral turpitude" is hereafter irrelevant in determining whether a crime is admissible for impeachment purposes. As Rule 1–502 clearly states, only infamous crimes and other crimes relevant to credibility are admissible.

**5.** Crimes classified as *crimen falsi* include crimes in the nature of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on the witness's propensity to testify truthfully. *Beales v. State*, 329 Md. 263, 269–70, 619 A.2d 105 (1993).

**6.** In *Prout*, the three judge plurality believed that the issue of whether a particular crime bears on credibility should be viewed as a matter of trial court discretion. But the two concurring judges and two dissent-

If the crime falls within one of the two categories in the eligible universe, then the second step is for the proponent to establish that the conviction was not more than 15 years old, that it was not reversed on appeal, and that it was not the subject of a pardon or a pending appeal. *See* Md. Rule 1–502(b), (c). Finally, in order to admit a prior conviction for impeachment purposes, the trial court must determine that the probative value of the prior conviction outweighs the danger of unfair prejudice to the witness or objecting party. *See* Md. Rule 1–502(a). *See also Beales, supra,* 329 Md. at 270–73, 619 A.2d 105 (holding that a trial court must perform this balancing test both for infamous crimes and for other crimes relevant to credibility). This third step is clearly a matter of trial court discretion. The crux of this case focuses on the first step—determining if distribution of cocaine falls within the eligible universe of crimes which may be used to impeach a witness. More specifically, we consider whether a prior conviction for distribution of cocaine impacts on the credibility of a witness.

At common law, one who had been convicted of treason, any felony, a misdemeanor involving dishonesty, or crimes relating to the obstruction of justice, was considered incompetent to testify at any trial. *See McCormick on Evidence* (John William Strong ed., 4th ed. 1992) § 42, at 142. Therefore, at common law, an individual convicted of an "infamous crime" was disqualified from testifying. *Prout, supra,* 311 Md. at 359, 535 A.2d 445. In 1864, the General Assembly abrogated this prohibition. Chapter 109 of the Acts of 1864 permitted a person who had been convicted of an infamous crime to testify, but also allowed that person's credibility to be impeached by introducing the prior conviction. That statute retained its original substance for over 125 years. *See Prout, supra,* 311 Md. at 358–59, 535 A.2d 445. As of 1988, it was embodied in Maryland Code (1974, 1984 Repl.Vol.) § 10–905 of the Courts

---

ing judges each thought that the question was a matter of law. Both parties in the instant case appear to agree with the conclusion that the threshold determination is a matter of law which will promote consistency throughout the State.

and Judicial Proceedings Article.[7] *Prout, supra,* 311 Md. at 358–59, 535 A.2d 445.

In *Wicks v. State,* 311 Md. 376, 384 n. 5, 535 A.2d 459 (1988), we indicated that this area of the law required further consideration. Consequently, Rule 1–502 was drafted, redrafted numerous times, and eventually adopted by this Court on November 1, 1991; it became effective January 1, 1992. *See* 18 *Maryland Register* 2622 (November 29, 1991). As previously stated, the precise issue in this case is whether distribution of cocaine is a crime that is probative of a person's veracity and thus is potentially admissible for impeachment purposes under Rule 1–502.

We first note that:

"In a purely philosophical sense it can be said, understandably, that all violations of the law, by their very nature, involve some element of dishonesty. Thus, one could argue that jay walking, spitting on a sidewalk, running a red light or a stop sign, and exceeding the speed limit, however slightly, are 'dishonest' because they involve acts for which one can be punished by the State or its subdivisions."

*Gregory v. State,* 616 A.2d 1198, 1204 (Del.1992). Nevertheless, we have determined that certain crimes have little or no bearing on credibility and consequently are not admissible for impeachment purposes. *See, e.g., Morales, supra,* 325 Md. at 339, 600 A.2d 851 (possession of PCP, assault and battery, disorderly conduct, and motor vehicle offenses); *Lowery v. State,* 292 Md. 2, 2, 437 A.2d 193 (1981) (possession of barbiturates); *Ricketts v. State,* 291 Md. 701, 713–14, 436 A.2d 906 (1981) (indecent exposure). *See also Wallach v. Board of Education,* 99 Md.App. 386, 391–92, 637 A.2d 859 (1994)

---

**7.** Section 10–905(a) currently provides in pertinent part:

"Evidence is admissible to prove the interest of a witness in any proceeding, or the fact of his conviction of an infamous crime."

We have held, however, that to the extent that Rule 1–502(a) is inconsistent with this section, the rule prevails. *Beales, supra,* 329 Md. at 273, 619 A.2d 105.

(holding that a prior conviction for conspiracy to distribute marijuana is not admissible for impeachment purposes).

It is interesting to note that the question before us today was considered at a public meeting conducted by the Court on October 24, 1991, immediately prior to final adoption of Rule 1–502. Our discussion clearly indicates that we foresaw the issue at that time, but decided to not address it.[8] As that discussion predicted, the day has arrived and the issue is now squarely before the Court.

As already observed, we have held that a prior conviction for simple possession of narcotics has no bearing on credibility. *See Morales, supra,* 325 Md. at 339, 600 A.2d 851 (possession of PCP); *Lowery, supra,* 292 Md. at 2, 437 A.2d 193 (possession of barbiturates). *See also Cason v. State,* 66 Md.App. 757, 774, 505 A.2d 919 (1986) ("A prior conviction for possession of heroin is not admissible for impeachment purposes."). But we have never expressly considered whether a conviction for drug dealing—whether it be drug manufacturing, drug distribution, or possession of drugs with intent to sell—is probative of a lack of veracity.

In *Carter v. State,* 80 Md.App. 686, 566 A.2d 131 (1989), the Court of Special Appeals determined that a prior conviction for drug manufacturing could be used to impeach a testifying defendant. There, the court said:

---

**8.** We transcribe here the pertinent parts of the October 24, 1991 audio tape:

Murphy, C.J.: "Is [drug] distribution within this?"

Chasanow, J.: "That is a subject somebody is going to have to decide at a later date."

Murphy, C.J.: "That leaves the trial judges ... hanging out there not knowing ... what ... is eligible."

$*$ $*$ $*$ $*$ $*$ $*$

McAuliffe, J.: "The only way we'll decide [whether convictions for drug distribution or possession of drugs with intent to sell are relevant to credibility] is to get a case up here and decide it."

Eldridge, J.: "Grant *cert.;* we'll decide it."

Bell, J.: "We'll get it."

McAuliffe, J.: "Sounds like it."

Wilner, C.J. (Chairman of the Rules Committee): "There are plenty to choose from."

"[A]ppellant's prior conviction for manufacturing drugs is relevant to the issue of his credibility. This particular crime necessarily requires several steps involving premeditation and conscious violation of the law—acquisition of the raw materials for making drugs, processing the material, and finding a means of distributing the drugs. Furthermore, all of these acts must be carried out surreptitiously to avoid detection and arrest."

*Id.* at 693, 566 A.2d 131. It also stated:

"We believe that drug manufacturing . . . is relevant to the issue of appellant's propensity to tell the truth. A person who has committed crimes that posed grave danger to the fabric of society, that only could have been carried on furtively, and that required him to take great pains to conceal his conduct, would probably not be adverse to concealing the truth if it is to his advantage to do so."

*Id.* at 694, 566 A.2d 131.

■ Similarly, we believe that an individual convicted of cocaine distribution would be willing to lie under oath. "[A] narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *United States v. Ortiz,* 553 F.2d 782, 784 (2nd Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977). Therefore, we hold that a prior conviction for distribution of cocaine is relevant to credibility and as such is admissible for impeachment purposes, subject to the other conditions that exist in Rule 1–502.

We are aware that under article 27, § 286,[9] the definition of distributing a controlled dangerous substance may include activity that would have little bearing on a witness's credibility. That is, § 277(*l*) defines "distribute" as "to deliver" a controlled dangerous substance, and "deliver" is defined in § 277(i) to mean "the actual, constructive, or attempted trans-

---

9. Section 286(a)(1) makes it unlawful to, *inter alia,* distribute a controlled dangerous substance.

fer, exchange, or delivering of a controlled dangerous substance from one person to another with or without renumeration." Consequently, Giddens's contention that some activity which has little bearing on truthfulness, such as passing a marijuana cigarette to a friend at a party or concert, is included within the technical definition of drug distribution is not unreasonable. Nevertheless, we are not persuaded by Giddens's argument.

Although, in theory, some activity that falls within the definition of drug distribution would not be probative of an individual's lack of veracity, the vast majority of convictions for cocaine distribution are relevant to credibility. As to this, we quote with approval from Judge Murphy's dissenting opinion below.

> "We do indeed see many drug cases, but of the cocaine *distribution* cases which come before the trial and appellate courts of this state, rare are the ones that do not involve surreptitious behavior. That appellant was sentenced 'to prison' indicates that he was guilty of a serious violation of the controlled dangerous substance laws. There is simply no warrant to declare all cocaine distribution convictions ineligible for impeachment because a minuscule number of them may not entail secretive behavior."

*Giddens, supra,* 97 Md.App. at 596, 631 A.2d 499. (emphasis in original). We share the belief that a person will rarely be convicted of cocaine distribution if that person merely gives a small quantity of cocaine to a friend at a party. Rather, those convicted of cocaine distribution are almost always "drug dealers" in the traditional sense and it is reasonable to conclude that a person is less credible because he or she is a convicted drug dealer.

The crime of cocaine distribution is not so "ill-defined" that a jury would have difficulty determining the precise nature of the offense. The offense is unlike that involved in *Ricketts, supra,* 291 Md. at 713–14, 436 A.2d 906 (holding that, because the crime of "indecent exposure" is so ill-defined that it causes the fact finder to speculate as to what conduct is

impacting on the witness's credibility, it should be excluded). Concededly, it may be difficult to determine what a defendant convicted of "indecent exposure" may have done; distribution of cocaine, however, has a well understood meaning within the community and the name of the crime permits the fact finder to assess what, if any, impact such conviction has upon a witness's veracity.

Other courts have similarly concluded that a prior conviction for drug dealing is relevant to a witness's credibility. *See State v. Pierce,* 107 Idaho 96, 685 P.2d 837, 844 (1984) (although court said that it would be a strain to characterize delivery of heroin as a crime of dishonesty, it held that that offense "had probative value on the question of credibility" because a person who has committed such a crime shows disrespect for the law and may not take an oath seriously); *People v. Washington,* 85 Ill.App.3d 522, 40 Ill.Dec. 954, 958, 407 N.E.2d 185, 189 (1980) (stating that "Illinois courts have consistently determined that a conviction for the unlawful possession or delivery of controlled substances would be the type of conviction which would be probative of credibility and would afford a basis for impeaching credibility"); *State v. Lagares,* 247 N.J.Super. 392, 589 A.2d 630, 633 (1991), *aff'd in part, rev'd in part on other grounds,* 127 N.J. 20, 601 A.2d 698 (1992) (concluding that prior convictions for possession of marijuana and possession with intent to distribute marijuana "clearly have a bearing on [a] defendant's credibility"); *State v. Johnson,* 277 Or. 45, 559 P.2d 496, 497 (1977) (In Banc) ("Defendant's previous conviction of criminal activity in drugs was relevant to impeach defendant's credibility."). *See also Ortiz, supra,* 553 F.2d at 784 (determining that prior conviction for heroin sales may be admissible to impeach). Many federal courts that admit narcotics offenses for impeachment purposes, however, generally do so only upon a showing by the government that the specific facts of the prior offense involved conduct reflecting dishonesty or false statement. *See United States v. Mehrmanesh,* 689 F.2d 822, 833 n. 13 (9th Cir.1982); *United States v. Hastings,* 577 F.2d 38, 41 (8th Cir.1978); *McCormick on Evidence, supra,* § 42, at 147.

On the other hand, some courts have determined that a prior conviction for drug dealing is not probative of an individual's lack of veracity. *See State v. Geyer,* 194 Conn. 1, 480 A.2d 489, 497 (1984) (concluding that prior convictions for possession and sale of narcotics have "no special or direct materiality to [a] defendant's credibility"); *Gregory, supra,* 616 A.2d at 1204 (determining that drug-related offenses, such as possession with intent to deliver a controlled substance, do not involve dishonesty and thus do not relate to credibility); *State v. Zaehringer,* 325 N.W.2d 754, 755–58 (Iowa 1982) (holding that delivery of marijuana does not involve dishonesty or false statement); *State v. Hall,* 246 Kan. 728, 793 P.2d 737, 751 (1990), *aff'd on appeal after remand,* 252 Kan. 669, 847 P.2d 1288 (1993) ("It has long been the rule in this state that drug offenses are not crimes involving dishonesty and, therefore, cannot be admitted for the purpose of impeaching the credibility of a witness."). *See also Mehrmanesh, supra,* 689 F.2d at 833 (concluding that a prior conviction for smuggling hashish into the United States, although it involves surreptitious activity, does not bear directly on the likelihood that the defendant would testify untruthfully); *United States v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980) (rejecting the government's argument that the crime of heroin distribution involves dishonesty or false statement).

As we have said, however, we agree with the former line of cases holding that such a conviction is relevant to credibility. After determining that the crime of cocaine distribution falls within the eligible universe of offenses that may be used for impeachment purposes, we proceed to the second step which requires us to ensure that the conviction was not more than 15 years old, that it was not reversed on appeal, and that it was not the subject of a pardon or a pending appeal. *See* Md. Rule 1–502(b), (c). In the instant case, the conviction was three years old and was not reversed on appeal or the subject of a pardon or a pending appeal.

■ Finally, the third step requires the trial court to determine that the probative value of the prior conviction outweighs

the danger of unfair prejudice to the objecting party. *See* Md. Rule 1–502(a). In the case at bar, the trial court adequately performed this balancing test. It said:

"[A]fter finding that it is a crime of moral turpitude, I need to determine whether or not its probative value of admitting the evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

"In this case, the offense for which he is being tried is a battery, which has no relationship to distribution of a controlled dangerous substance. I find that I will give a cautionary instruction and instruct them as to how they can utilize it. But I believe that the probative value of admitting the evidence outweighs the danger of unfair prejudice in view of the charges in this case. If this were a charge of distribution of controlled dangerous substance, I would have a different finding."

Although the trial court improperly used the term "moral turpitude," it nevertheless properly weighed the probative value against the danger of prejudice. We note that when a trial judge weighs the probative value against the prejudicial effect, an "important factor to remember is that a prior conviction which is similar to the crime for which the defendant is on trial may have a tendency to suggest to the jury that if the defendant did it before he probably did it this time." *Prout, supra,* 311 Md. at 364, 535 A.2d 445. Indeed, the Court of Special Appeals has held that a defendant's prior conviction for drug distribution is inadmissible in a subsequent drug distribution case because "the probative value of [the prior drug distribution conviction] was clearly outweighed by its prejudicial effect." *Dyce v. State,* 85 Md.App. 193, 199, 582 A.2d 582 (1990).[10] The trial court's discussion in the instant case evidences its understanding of the balancing process.[11]

---

**10.** *Dyce* did not decide whether a prior conviction for drug distribution is relevant to a witness's credibility. *See* 85 Md.App. at 199, 582 A.2d 582.

**11.** With regard to the general admissibility of prior cocaine distribution convictions for impeachment purposes, we provide the following guid-

 Moreover, we reiterate that only the name of the conviction, the date of the conviction, and the sentence imposed may be introduced to impeach a witness. *See Foster v. State*, 304 Md. 439, 469–70, 499 A.2d 1236 (1985). A trial court should never conduct a mini-trial by examining the circumstances underlying the prior conviction. The Reporter's Note prepared by the Reporter of the Rules Committee, accompanying an earlier proposal of Rule 1–502, supports this common sensical approach.

> "The Subcommittee intends that the offenses be viewed categorically and that the court *not* examine the specific facts underlying the prior conviction. The marginal gain in probative value on the question of credibility in a particular case [is] likely to be substantially outweighed by the expenditure of judicial resources necessary to examine the facts underlying prior convictions in every case." (emphasis in original).

In the instant case, the trial court appropriately declined to examine the underlying facts of Giddens's prior conviction for cocaine distribution.

We therefore conclude that the trial court properly admitted Giddens's prior conviction for distribution of cocaine for the limited purpose of impeaching his credibility. Consequently, his conviction for assault should have been affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY. COSTS TO BE PAID BY RESPONDENT.*

ELDRIDGE and BELL, JJ., dissent.

---

ance to trial courts. Because citizens frequently read in the newspapers or hear through their television sets that drugs are destroying the fabric of our society, trial courts should be especially aware, when performing the balancing test to determine if a defendant's prior conviction for cocaine distribution is admissible, that jurors may give undue weight to the prior distribution conviction, thus causing the defendant to be unfairly prejudiced.

ELDRIDGE and BELL, JJ., dissenting:

For the reasons set forth in Chief Judge Wilner's opinion for the Court of Special Appeals, *Giddens v. State,* 97 Md.App. 582, 631 A.2d 499 (1993), we would affirm the judgment of the Court of Special Appeals.