657 A.2d 796

**Maria Lisa LOVE**

v.

**Delores Christina CURRY (Koscielski).**

**No. 1341, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

May 1, 1995.

686

Robert L. Ferguson, Jr. (Peter J. Basile and Thieblot, Ryan, Martin & Ferguson on the brief), Baltimore, for appellant.

Michael B. Mann (George Psoras on the brief), Towson, for appellee.

Argued before WENNER and FISCHER, JJ., and JAMES S. GETTY, Judge of the Court of Appeals (Retired), Specially Assigned.

WENNER, Judge.

This matter comes before us on an appeal by Maria Lisa Love from a judgment entered by the Circuit Court for Baltimore County, after a jury returned a verdict in favor of appellee, Delores Christina Curry (Koscielski).[1] On appeal, appellant presents us with the following questions:

1. Whether the trial court erred when it refused to admit evidence of appellee's conviction for distributing/importing controlled dangerous substances?

2. Whether the trial court committed reversible error by allowing appellee to impeach appellant on a collateral matter by introducing testimony that appellant was in possession of an open container of beer when there was no evidence that appellant was under the influence of alcohol or intoxicated?

3. Whether appellee is contributorily negligent as a matter of law because she failed to judge the speed and distance of the approaching vehicle and stepped into the street to her peril?

4. Whether the trial court erred in instructing the jury?

Finding that the trial court erred in excluding evidence of appellee's prior conviction for importing a controlled dangerous substance, we shall reverse the judgment of the circuit court and remand the case to that court for a new trial.

---

1. The jury awarded appellee $224,115.55 in damages.

## DISCUSSION

This case began at dusk on 1 September 1988, when a car driven by appellant struck appellee as appellee was endeavoring to cross Old Eastern Avenue, in Baltimore County, Maryland. As a result of the accident, appellee and Robert Curry filed a complaint in the Circuit Court for Baltimore County seeking damages for injuries received by appellee as a result of appellant's negligence and for loss of consortium. Subsequently, the claim for loss of consortium was dismissed.[2] Ultimately, the case came to trial before a jury, which jury awarded appellee more than $224,000 in damages.

### I.

Appellant first contends that the trial court erred by precluding her from impeaching appellee with evidence of appellee's prior conviction for importing more than 28 grams of Phencyclidine (PCP), in violation of Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 286A. A violation of § 286A is a felony. Anyone convicted of violating § 286A may be fined not more than $50,000 and/or imprisoned for not more than 25 years. Appellee had violated § 286A approximately eight months after the accident occurred.

As the trial began, appellee moved *in limine* to preclude appellant from using her prior conviction for impeachment purposes, proffering that she intended to admit having smoked part of a PCP laced cigarette with friends, including one Ms. Philpot, several hours prior to the accident. We note here that Ms. Philpot later testified, contradicting appellee and stated that appellee was getting high throughout the afternoon. Nevertheless, the trial court reserved ruling on the motion until the trial had begun and both parties were ordered to refrain from mentioning appellee's prior conviction during their opening statements.

---

2. Subsequent to filing of the complaint, Robert Curry and Ms. Koscielski separated.

During the trial, appellant offered into evidence as Exhibit 8 a record of appellee's conviction for importing a controlled dangerous substance. The following colloquy ensued:

> **LOVE'S COUNSEL:** ... I am nevertheless offering this and ask the Court to permit me to introduce it into evidence concerning that conviction, because I believe our Court of Appeals is [sic] not spoken on that and I believe that the distribution of substances in view of the numerous problems that we are having in our society, specifically in our city and surrounding counties concerning the drug and drug abuse problem, while possession may not be a crime of moral turpitude, I believe that our Court of Appeals would consider that a distribution of this scourge on our society is a crime of moral turpitude.

> **KOSCIELSKI'S COUNSEL:** I think this is what we already argued. The, the one case, *Morales v. State*, is right on point, too, says, despite Mr. Ferguson's feelings to the contrary, it's not what is referred to as crime of moral turpitude under the statute to permit the impeachment of a witness. So, therefore, we think it serves no other purpose than to, other than, than to prejudice the jury for no relevant reason to this case.

> **LOVE'S COUNSEL:** Your Honor, I know we discussed this at the bench last week and your Honor ruled. I simply want to make sure I preserve this point for the record.

> **COURT:** It's preserved for the record. And I indicated that I think that I would deal with it when it arose. It has now arisen, and I will deal with it.

> **LOVE'S COUNSEL:** Right.

> **COURT:** I will not permit Defendant's Exhibit No. 8 to be admitted into evidence, believing under the case of *Morales v. State* and *Giddings [sic] v. State* that a distribution of PCP is not a crime which is appropriately used for impeachment purposes.

Following this colloquy, Exhibit 8 was marked for identification only.

## A.

Whether a prior conviction for importing CDS can be used for impeachment purposes has not previously been addressed by Maryland's appellate courts, although several similar drug offenses have been considered. *See Morales v. State*, 325 Md. 330, 600 A.2d 851 (1992) (possession of CDS not admissible); *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994) (distribution of CDS is admissible); *Carter v. State*, 80 Md.App. 686, 566 A.2d 131 (1989) (manufacture of CDS is admissible). At the time of this trial, the admissibility of prior convictions for impeachment purposes was governed by Maryland Rule 1–502,[3] which provided in pertinent part:

(a) Generally.—For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was an infamous crime or other crime relevant to the witness's credibility and the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

(b) Time Limit.—Evidence of a conviction under this Rule is not admissible if a period of more than 15 years has elapsed since the date of the conviction.

\* \* \* \* \*

In the case at hand, the trial court likened importing CDS to possessing or distributing CDS. Relying on *Morales, supra*, and on our *Giddens v. State*, 97 Md.App. 582, 631 A.2d 499 (1993), the trial court concluded that appellee's prior conviction was neither infamous nor relevant to appellee's credibility. Seven months after the trial had been concluded, however, the Court of Appeals filed its *State v. Giddens*, 335 Md. 205, 642 A.2d 870 (1994), reversing our *Giddens.*

---

**3.** Md.Rule 1–502 was rescinded, effective 1 July 1994, and recodified as Md.Rule 5–609, effective 1 July 1994.

 Whether a prior offense is relevant to credibility is a matter of law. *See State v. Giddens, supra* at 213, 642 A.2d 870 ("If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends. This threshold question of whether or not a crime bears upon credibility is a matter of law."). Although the trial court ruled that appellee's prior conviction for violating § 286A was not an offense to be used for impeachment purposes, equating it with a conviction for distributing CDS, in light of the Court of Appeals's *Giddens,* the trial court erred by excluding appellee's prior conviction. As the trial court determined that appellee's prior conviction could not be used for impeachment purposes, it did not consider whether its probative value outweighed its prejudicial effect.

In support of its ruling, the trial court first cited *Morales, supra,* in which the Court of Appeals concluded that simple possession of PCP was neither infamous nor relevant, and did "not bear on the witness's credibility." *Morales, supra,* 325 Md. at 339, 600 A.2d 851; *but see Smith v. State,* 6 Md.App. 581, 589, 252 A.2d 277 (1969) ("We think a conviction for possession of narcotics is certainly as relevant to bear on credibility as a conviction for assault, and we do not think that the fact that the conviction was seven years prior to the trial was sufficient to make it too remote for a crime which is not infamous under the law."). Although the Court in *Morales* concluded that possession was not an infamous crime, it did not decide "whether a prior conviction for possession with intent to distribute a controlled dangerous substance may ever be used to impeach." *Id.* at 339, 600 A.2d 851.[4]

Our *Giddens* was the first occasion for a Maryland appellate court to be directly confronted with the use of a conviction for distribution of CDS for impeachment purposes. In our *Gid-*

_____

4. Similarly, in *Dyce v. State,* 85 Md.App. 193, 582 A.2d 582 (1990), we considered whether a conviction for distribution of cocaine was admissible for impeachment purposes, but did not decide its relevance to the witnesses' credibility. We concluded that its probative value did not outweigh its prejudicial effect because Dyce was charged with the same offense offered for impeachment.

*dens,* we concluded that distribution of CDS was too ill-defined an offense to be used for impeachment. We said:

> The behavior is criminal, to be sure, but it is not necessarily dishonest. It does not necessarily involve surreptitious conduct or moral depravity sufficient to suggest a lack of credibility. It may, of course, but it need not.

*Giddens v. State,* 97 Md.App. at 591, 631 A.2d 499. In reaching our conclusion, we quoted from *Ricketts v. State,* 291 Md. 701, 436 A.2d 906 (1981), in which the Court of Appeals said:

> [i]f the crime is so ill-defined that it causes the factfinder to speculate as to what conduct is impacting on the defendant's credibility, it should be excluded. Stated differently, since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment.

*See Giddens,* 97 Md.App. at 591, 631 A.2d 499. In sum, we concluded in our *Giddens* that, as distribution of CDS does not necessarily involve dishonest behavior, if admitted, "the jury is at liberty to assume the worst". *Id.* at 591–592, 631 A.2d 499.

As we have said, the Court of Appeals reversed our *Giddens,* holding that "[t]he crime of cocaine distribution is not so "ill-defined" that a jury would have difficulty determining the precise nature of the offense." *State v. Giddens, supra,* 335 Md. at 218, 642 A.2d 870. Rather, the Court of Appeals compared drug distribution with drug manufacture, citing with approval our *Carter v. State,* 80 Md.App. 686, 566 A.2d 131 (1989), in which we said:

> We believe that drug manufacturing, on the other hand, is relevant to the issue of appellant's propensity to tell the truth. A person who has committed crimes that posed grave danger to the fabric of society, that only could have been carried on furtively, and that required him to take great pains to conceal his conduct, would probably not be adverse to concealing the truth if it is to his advantage to do so.

*Id.* at 694, 566 A.2d 131. Building upon *Carter,* the Court went on to conclude that similar characteristics are inherent in the life of one convicted of drug distribution, opining that a narcotics trafficker would be willing to lie under oath because he/she "lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Id.* at 217, 642 A.2d 870 (quoting *U.S. v. Ortiz,* 553 F.2d 782, 784 (2nd Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977)). Thus, the Court of Appeals recognized the nature of the conduct inherent in distributing narcotics, and concluded that a prior conviction for distribution of CDS is admissible for impeachment purposes if it is determined to be relevant, and not unduly prejudicial to the accused.

▇ In the instant case, we note that the offense of importing CDS into Maryland is neither akin to possession of CDS nor distribution of CDS. Although it possesses elements common to each, the question is whether the nature of the conduct underlying the offense is more similar to that of possession, or to that of distribution.

▇ According to appellee, "[t]he crime of importation is identical to the crime of possession, in its relationship to the activities encompassed and their bearing on credibility." To be sure, were we to overlook the minimum amount required to constitute the offense, and the requirement that the CDS be smuggled across the State line, the offense of bringing CDS into Maryland is no more serious than that of possession. But the minimum amount required to be imported to constitute the offense is quite substantial. Such minimum amounts include:

1) 100 pounds or greater of marijuana,

2) 28 grams or greater of cocaine,

3) 4 grams or more of morphine or opium,

4) 1,000 dosage units of lysergic acid diethylamide or any mixture containing the equivalent of 1,000 dosage units of lysergic acid diethylamide,

5) 28 grams or more of PCP in liquid or powder form or 112 grams or more of any mixture containing PCP,

6) 1,000 dosage units or more of methaqualone, or

7) 28 grams or more of methamphetamine.

Md.Code (1957, 1987 Repl.Vol.) Art. 27, § 286A. Clearly, the necessary minimum amount indicates the intent of the Legislature to catch larger fish than those simply possessing CDS. As we see it, § 286A is aimed at drug suppliers or their couriers, who import CDS into Maryland where the CDS does its harm. Moreover, the proscribed punishments fit the offense. Importing CDS into Maryland is a felony, punishable by a fine of not more than $50,000 and imprisonment for not more than 25 years. On the other hand, simple possession is a misdemeanor, punishable by a fine of not more than $25,000 and imprisonment for not more than 4 years.

That § 286A targets those who import substantial amounts of CDS into Maryland should not be treated lightly. Rather, the very fact that one knowingly imports CDS into Maryland is an indicium of the untrustworthiness of the one doing the importing. Instead of involving one who returns to Maryland with a small amount of CDS for his or her personal use, a violation of § 286A involves surreptitiously bringing a substantial amount of CDS into Maryland. Hence, we disagree with appellee's simplistic description of her prior conviction.

Nevertheless, importing CDS into Maryland is a separate and distinct offense from manufacturing or distributing CDS. The requisite intent for either of the latter offenses may be presumed where one is found to have possessed CDS in a sufficient quantity reasonably to indicate an intent to distribute or manufacture the drug. Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 286. Conversely, that one intended to distribute the CDS is not an element of the offense of bringing CDS into the State. *Rose v. State,* 74 Md.App. 644, 539 A.2d 1142, *cert. denied,* 313 Md. 31, 542 A.2d 858 (1988). One may be convicted of both bringing into Maryland and of distribution without placing the offender in double jeopardy. *Id.* Rather, a conviction for importing CDS simply requires proof that one brought at least the necessary minimum amount of

the substance into the State. *Cherry v. State,* 86 Md.App. 234, 586 A.2d 70 (1991).

■ The offenses of manufacturing and distributing CDS are relevant to the credibility of a witness because of the premeditative, furtive and surreptitious nature of the underlying activities; in addition to the necessity for the perpetrator to be "prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *State v. Giddens,* 335 Md. at 217, 642 A.2d 870 (quoting *U.S. v. Ortiz,* 553 F.2d 782, 784 (2nd Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977)). In either offense, the perpetrator must first devise a scheme for successfully completing the task while remaining hidden from law enforcement officials. While carrying out the scheme, the perpetrator must always avoid detection. Inherent in the nature of either distributing or manufacturing illegal drugs is a consciousness of guilt and a willingness to be deceptive.

Importing a substantial quantity of CDS into the State requires no less willingness to deceive than do manufacturing and distributing drugs. One importing CDS into the state is a drug trafficker, and is fully aware of the consequences of being apprehended. It is obvious to us that, in order to avoid detection, the perpetrator would not only fabricate whatever tale he/she may deem appropriate, but would continue the deception over a period of time. In the present case, appellee was convicted for importing more than 28 grams of PCP into the state. Thus, appellee's prior conviction of importing CDS is relevant to appellee's credibility, and admissible for impeachment purposes.

## B.

We further conclude that the offense for which appellee was previously convicted is not too ill-defined to be admitted for impeachment purposes. According to *Ricketts v. State, supra,* "since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should

be inadmissible for purposes of impeachment." *Ricketts, supra,* 291 Md. at 713, 436 A.2d 906. Appellee was convicted of importing more than 28 grams of PCP. We believe that most of us would recognize that importing drugs requires concealment and deceit of a continuing nature. Whether it be a bootlegger, a gunrunner, a smuggler, or a drug trafficker, that these activities make it necessary for the person and the object involved to avoid detection is common knowledge and would not confuse a jury. Hence, *Ricketts* is not apposite. In *Ricketts,* the defendant had a prior conviction for indecent exposure, and the trial court concluded that indecent exposure was too ill-defined because it included "an innumerable variety of offenses, including acts that are reckless or negligent." *Id.* While importing CDS may be based upon the importation of a minimum amount of any one of a variety of drugs, the character of the underlying activity does not change.

## C.

Appellee further asserts that her prior conviction for importing PCP should not be admitted because its probative value does not outweigh its prejudicial effect. Ordinarily, such a determination is better left to the trial court, although we have, on occasion, decided the issue *sua sponte. See Dyce v. State, supra.* Appellee argues that admitting her prior conviction would unduly prejudice her, because importing PCP is too similar to her having smoked PCP prior to the accident, citing *Dyce,* where we said:

> In the case before us, the crime for which appellant was on trial is virtually identical to the crime for which he had been previously convicted. Under these circumstances, admission of the prior conviction constituted a clear abuse of discretion by the trial judge and was reversible error.

*Id.* at 200, 582 A.2d 582. Moreover,

> [t]he danger in admitting prior convictions as evidence to impeach the defendant stems from the risk of prejudice. The jury may improperly infer that the defendant has a history of criminal activity and therefore is not entitled to a

favorable verdict. Such evidence may detract from careful attention to the facts, despite instructions from the Court, influencing the jury to conclude that if the defendant is wrongfully found guilty no real harm is done. Where the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater; as the jury may conclude that because he did it *before* he most likely has done it *again.* (Emphasis in original).

*Ricketts v. State, supra* at 703, 436 A.2d 906.

According to appellee, her admitted use of PCP prior to the accident was a primary issue in the case *sub judice,* which would make her prior conviction for importing PCP too prejudicial to be admitted. Appellee apparently equates a primary issue in a civil case to the ultimate issue in a criminal case. She is wrong. We remind appellee that she is not on trial for the use, or possession of CDS. If she were, then the dictates of *Ricketts* and *Dyce* would apply. Nonetheless, unlike a criminal defendant, whose guilt must be proved beyond a reasonable doubt, appellee is the plaintiff in this case. The possibility of prejudice in attacking a criminal defendant's credibility with a prior conviction for a crime similar to the one for which the defendant is on trial simply does not exist here. The issue in the present case is whether appellant was negligent, and whether that negligence caused the accident. Thus, we conclude that *Ricketts* and *Dyce* are inapposite.

Our conclusion, however, does not preclude a trial court from excluding evidence of a prior conviction where it finds that its possible undue prejudice outweighs its probative value. Former Maryland Rule 1–502 and new Rule 5–609 are general in nature, protecting all witnesses from undue prejudice. Unfortunately, there is a paucity of caselaw concerning the use in civil cases of prior convictions for impeachment purposes.

Nonetheless, we find *Shows v. M/V Red Eagle,* 695 F.2d 114 (5th Cir.1983), to be helpful. The sole issue in *Shows* was whether the trial court erred by admitting for impeachment

purposes plaintiff's prior conviction for armed robbery, which had occurred ten years previously. Ultimately, the Fifth Circuit found that its possible undue prejudice greatly outweighed its probative value, noting that admitting the

evidence presented the risk that a jury would not be fair to Shows' claim, not because it did not believe him, but because as a convict he was not deserving of their justice. This risk weighs heavily here because the record was not in the posture to justify evidence of the details of imprisonment and parole flowing from a conviction for armed robbery ten years earlier. As noted previously, Shows' trial testimony had produced no inconsistency with prior out-of-court statements.

*Id.* at 118. In conclusion, the Fifth Circuit believed that "this evidence was wafted before the jury to trigger their punitive instincts and there is a great risk that it did so." *Id.* at 119.

 Of course, a certain amount of prejudice is inherent in using prior convictions for impeachment purposes. In the eyes of a jury, once a witness has been impeached, the witness's testimony will no doubt be viewed differently. Moreover, it may be reasonably assumed that the more serious the prior offense the greater the possibility that the jury will find the witness "not deserving of their justice." *Id.* at 118. Nevertheless, if its probative value outweighs its possible undue prejudice, it should be admitted. A trial court should weigh several factors in reaching its decision: whether the witness's credibility been called into question by either inconsistent or contradictory testimony; how recent was the prior conviction; whether the outcome of the case hinge largely on the credibility of the witness; and other inquiries that may be relevant to a particular case.

 In the instant case, the impact of appellee's prior conviction was diluted by appellee's admission that she had smoked PCP laced cigarettes prior to the accident. Thus, the jury was not likely to have been unduly prejudiced upon learning of appellee's subsequent conviction for importing PCP into Maryland. On the other hand, the extent to which

appellee may have been impaired by smoking PCP laced cigarettes before attempting to cross Old Eastern Avenue is quite relevant to the case. Appellee's testimony regarding her drug use prior to the accident was contradicted by Ms. Philpot's testimony. As we noted earlier, Ms. Philpot had smoked PCP laced cigarettes with appellee prior to the accident, but stated that appellee smoked much more than appellee admitted. Consequently, the issue became one of credibility. Either appellee or Ms. Philpot was lying about appellee's use of PCP prior to the accident. In sum, appellee's prior conviction for an offense relevant to her credibility becomes more probative. Thus, it is a matter well within the discretionary authority of the trial court, and we will not invade that authority here. By no means is the issue of admissibility in this case, as clear as the one raised in *Dyce*.

## II.

Appellant next contends that the trial court erred by admitting the testimony of appellee's witness, Ricky White, concerning two open 16 ounce beer cans he observed in appellant's car immediately following the accident. White said that he came upon the accident scene soon after the accident occurred. According to White, both appellant and her passenger had a beer can nestled between their legs. At no time during the trial was any evidence offered suggesting that appellant was impaired or under the influence of alcohol; however, appellee argued that the open beer cans indicated that appellant may have been distracted while drinking. Not surprisingly, appellant responded by asserting that White's testimony prejudiced her defense. Appellant also notes White's lack of credibility. During the hearing on appellant's motion to suppress White's testimony, the trial court observed:

Court: Okay. Mr. Psoras [appellee's counsel], I didn't fall from the Christmas tree—

MR. PSORAS: No.

COURT: —but I was born on Christmas Day. I just asked this witness whether or not he felt any of this beer from this

full open can of beer had spilled in the vehicle after what I assume has to have been a tremendous impact of this vehicle operating at 30 or 35 miles an hour. As a human being, it is totally inconceivable to me that, that this beer had not spilled all over both of these women whom were the occupants of the vehicle.

I just think it strains credibility to its utmost belief that— in addition, there is a police report that I've seen in this case where the Police Officer has an ability to observe the condition of the driver of the vehicle. And there is nothing in there that I have seen concerning either an odor of alcoholic beverage about the Defendant, that her, his observation that he reported was that she was, apparently, normal. So there's nothing to support the Plaintiff's contention.

Nonetheless, the trial court ultimately admitted White's testimony for impeachment purposes, as in her deposition appellant had denied consuming beer prior to the accident.

Relying on *Kantor v. Ash,* 215 Md. 285, 137 A.2d 661 (1958), appellant contends that White's testimony should have been suppressed because "a witness may not be impeached by showing he has made statements which contradict his testimony in respect to facts that are collateral, irrelevant or immaterial to the issues of the case." In *Kantor,* the parties had been involved in a motor tort. Subsequent to the accident, the plaintiff complained of a heart problem allegedly caused by the accident, and he testified that he had been in perfect health prior to the accident. The defendant attempted to impeach the plaintiff by offering extrinsic evidence of three prior accidents in which the plaintiff had also been involved and claimed injury. The Court of Appeals found the prior accidents to be collateral and irrelevant to the case at hand, and that they should not have been admitted. In short, *Kantor* is inapposite.

 1 John W. Strong, *et al., McCormick on Evidence,* Ch. 5, § 49, p. 183 (4th ed. 1992) clarifies the difference between a collateral and a non-collateral matter.

> A matter is non-collateral if the matter is itself relevant in the litigation to establish a fact of consequence, i.e., relevant for a purpose other than mere contradiction of the in-court testimony of the witness.

Applying this test, we conclude that the extrinsic evidence of the open beer cans was admissible. According to appellee, appellant was driving too fast and not paying attention to the road. From White's testimony, the jury could have drawn an inference that appellant was drinking and not paying attention to the road. Although the trial court opined that White's testimony was almost farcical, she admitted it for impeachment purposes.

> The admission or exclusion of evidence is a function of the trial court which, on appeal, is traditionally viewed with great latitude. An appellate court will only reverse upon finding that the trial judge's determination was both manifestly wrong and substantially injurious.

*Shpak v. Schertle,* 97 Md.App. 207, 214, 629 A.2d 763 (1993) (citations omitted). There was no abuse of discretion.

### III.

Although we conclude that upon the facts elicited at trial, appellee was not contributorily negligent as a matter of law, we note that our decision here does not preclude such a finding at the new trial, if the facts there established warrant it.

Appellant contends that appellee was contributorily negligent as a matter of law, citing *Reid v. Pegg,* 256 Md. 289, 260 A.2d 38 (1969). *Reid,* however, did not involve a pedestrian crossing within a designated cross-walk and is thus inapposite.

In Maryland, a pedestrian crossing a street within a designated cross-walk has the right-of-way over on-coming traffic, and the driver of an approaching vehicle "shall come to a stop" when approaching a pedestrian in a cross-walk. Md. Code (1974, 1992 Repl.Vol.) Transportation Art., § 21–502(a)(2). The pedestrian's right-of-way is not absolute, however. There are instances in which such a pedestrian may be

found to be contributorily negligent as a matter of law. *Brown v. Rogers,* 19 Md.App. 562, 565, 313 A.2d 547 (1974).

The pedestrian, however, having looked before crossing and having seen no vehicle or a vehicle at a distance thought to be justifiably safe, has the right to assume that a motorist will respect his right-of-way. The question of contributory negligence on the part of a pedestrian crossing in a crosswalk, therefore, is usually for the jury.

*Id.* (citations omitted). Viewing the evidence in the case before us in the light most favorable to appellee, the record contains ample evidence to suggest that she had looked before stepping from the curb and was in a designated crosswalk when she was struck by appellant. Whether appellee had failed to judge appellant's speed and distance is a question for the trier of fact. Thus, the trial court did not err in failing to find appellee contributorily negligent as a matter of law.

## IV.

Finally, appellant contends that the trial court erred by instructing the jury that

a pedestrian in a crosswalk having looked before crossing and having seen a vehicle at a distance thought to be justifiably safe has the right to assume that a motorist will respect his or her right-of-way.

As appellant sees it, this instruction suggested to the jury that it should consider appellee's subjective belief of a justifiably safe distance, rather than the objective belief of an ordinarily prudent person under similar circumstances. As we said in *City of Baltimore v. Kelso Corp.,* 46 Md.App. 285, 294, 416 A.2d 1339 (1980), "in reviewing the instruction of the trial judge, [we] look at the complete charge, as a whole, and not selectively examine individual statements, which, out of context, appear misleading and improper." In addition to the portion complained of by appellant, the jury instructions also included a correct definition of "negligence," and of the standard of care required of a pedestrian in order to protect the

pedestrian.[5] We conclude that, as a whole, the trial court's instructions were not likely to have confused or misled the jury.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**

---

5. "Negligence is doing something that a person using ordinary care would not do, or not doing something that a person using ordinary care would do. Ordinary care means that caution, obtention or skill that a reasonable person would use under similar circumstances."

\* \* \* \* \* \*

"... the pedestrians must exercise ordinary care so as to protect the, protect the pedestrian's safety."